# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE**  **2. PLEASE TYPE OR PRINT**  **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption:<br><br>Beatty v. Vafeades | District Court or Agency:<br><br>Eastern District of NY | Judge:<br><br>Hon. Gary R. Brown |
|---|---|---|
| | Date the Order or Judgment Appealed from was Entered on the Docket:<br><br>August 15, 2025 | District Court Docket No.:<br><br>2:23-cv-1373 |
| | Date the Notice of Appeal was Filed:<br><br>September 4, 2025 | Is this a Cross Appeal?<br><br>☐ Yes  ☑ No |

| **Attorney(s) for Appellant(s):**<br><br>☑ Plaintiff<br>☐ Defendant | Counsel's Name:  Address:  Telephone No.:  Fax No.:  E-mail:<br><br>Wayne J. Schaefer, Esq. T:(631) 382-4800 F:(631) 382-4801 wjs@schaeferlawgroup.com<br>Schaefer Law Group, P.C.<br>22 Lawrence Avenue, Suite 301<br>Smithtown, NY 11787-3619 |
|---|---|
| **Attorney(s) for Appellee(s):**<br><br>☐ Plaintiff<br>☑ Defendant | Counsel's Name:  Address:  Telephone No.:  Fax No.:  E-mail:<br><br>Chelsea Weisbord, Esq. T:(516) 334-4500<br>Sokoloff Stern LLP<br>179 Westbury Avenue<br>Carle Place, NY 11514 |

| Has Transcript Been Prepared?<br><br>Yes | Approx. Number of Transcript Pages:<br><br>58 | Number of Exhibits Appended to Transcript:<br><br>0 | Has this matter been before this Circuit previously? ☐ Yes  ☑ No<br><br>If Yes, provide the following:<br><br>Case Name:<br><br>2d Cir. Docket No.:  Reporter Citation: (i.e., F.3d or Fed. App.) |
|---|---|---|---|

***ADDENDUM "A"*: COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.**

***ADDENDUM "B"*: COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.**

## PART A: JURISDICTION

| 1. Federal Jurisdiction | 2. Appellate Jurisdiction |
|---|---|
| ☐ U.S. a party  ☐ Diversity<br><br>☑ Federal question (U.S. not a party)  ☐ Other (specify): _____ | ☑ Final Decision  ☐ Order Certified by District Judge (i.e., Fed. R. Civ. P. 54(b))<br><br>☐ Interlocutory Decision Appealable As of Right  ☐ Other (specify): _____ |

**IMPORTANT. COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

**FORM C** (Rev. October 2016)

## PART B: DISTRICT COURT DISPOSITION  (Check as many as apply)

| 1. Stage of Proceedings | 2. Type of Judgment/Order Appealed | | 3. Relief |
|---|---|---|---|
| ☑ Pre-trial<br>☐ During trial<br>☐ After trial | ☐ Default judgment<br>☐ Dismissal/FRCP 12(b)(1)<br>  lack of subject matter juris.<br>☐ Dismissal/FRCP 12(b)(6)<br>  failure to state a claim<br>☐ Dismissal/28 U.S.C. § 1915(e)(2)<br>  frivolous complaint<br>☐ Dismissal/28 U.S.C. § 1915(e)(2)<br>  other dismissal | ☐ Dismissal/other jurisdiction<br>☐ Dismissal/merit<br>☐ Judgment / Decision of the Court<br>☑ Summary judgment<br>☐ Declaratory judgment<br>☐ Jury verdict<br>☐ Judgment NOV<br>☐ Directed verdict<br>☐ Other (specify): | ☑ Damages:<br> ☐ Sought: $ _____<br> ☐ Granted: $ _____<br> ☑ Denied: $ _____<br><br>☑ Injunctions:<br> ☐ Preliminary<br> ☐ Permanent<br> ☑ Denied |

## PART C: NATURE OF SUIT  (Check as many as apply)

| 1. Federal Statutes | | 2. Torts | 3. Contracts | 4. Prisoner Petitions |
|---|---|---|---|---|
| ☐ Antitrust<br>☐ Bankruptcy<br>☐ Banks/Banking<br>☑ Civil Rights<br>☐ Commerce<br>☐ Energy<br>☐ Commodities<br>☐ Other (specify): _____ | ☐ Communications<br>☐ Consumer Protection<br>☐ Copyright ☐ Patent<br>☐ Trademark<br>☐ Election<br>☐ Soc. Security<br>☐ Environmental | ☐ Admiralty/<br>  Maritime<br>☐ Assault /<br>  Defamation<br>☐ FELA<br>☐ Products Liability<br>☐ Other (Specify): | ☐ Admiralty/<br>  Maritime<br>☐ Arbitration<br>☐ Commercial<br>☐ Employment<br>☐ Insurance<br>☐ Negotiable<br>  Instruments<br>☐ Other Specify | ☐ Civil Rights<br>☐ Habeas Corpus<br>☐ Mandamus<br>☐ Parole<br>☐ Vacate Sentence<br>☐ Other |

(Federal Statutes also contains: ☐ Freedom of Information Act, ☐ Immigration, ☐ Labor, ☐ OSHA, ☐ Securities, ☐ Tax)

| 5. Other | 6. General | 7. Will appeal raise constitutional issue(s)? |
|---|---|---|
| ☐ Hague Int'l Child Custody Conv.<br>☐ Forfeiture/Penalty<br>☐ Real Property<br>☐ Treaty (specify): _____<br>☐ Other (specify): _____ | ☐ Arbitration<br>☐ Attorney Disqualification<br>☐ Class Action<br>☐ Counsel Fees<br>☐ Shareholder Derivative<br>☐ Transfer | ☑ Yes   ☐ No<br><br>Will appeal raise a matter of first impression?<br><br>☐ Yes   ☑ No |

1. Is any matter relative to this appeal still pending below? ☐ Yes, specify: _____ ☑ No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

    (A)   Arises from substantially the same case or controversy as this appeal? ☐ Yes ☑ No

    (B)   Involves an issue that is substantially similar or related to an issue in this appeal? ☐ Yes ☑ No

If yes, state whether ☐ "A," or ☐ "B," or ☐ both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|
| | | | |
| Name of Appellant: | | | |

| Date: 09/18/2025 | Signature of Counsel of Record: *Wayne J. Schaefer* |
|---|---|

## NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.
2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.
3. Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

      **PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

**FORM C**  (Rev. December 2016)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
------------------------------------------------------------------------X
JOHN BEATTY,

                    Plaintiffs-Appellant,


          -against-                            Docket No. 25-2153

JAMES VAFEADES, Individually, and in his capacity as
Police Commissioner of the Incorporated Village of
Rockville Centre, and THE INCORPORATED VILLAGE
OF ROCKVILLE CENTRE,

                    Defendants-Appellees.
------------------------------------------------------------------------X

## ADDENDUM "A" TO CIVIL APPEAL PRE-ARGUMENT STATEMENT OF PLAINTIFF-APPELLANT, JOHN BEATTY

1.     <u>DESCRIPTION OF THE NATURE OF THE ACTION</u>

       Plaintiff-appellant, John Beatty, an Incorporated Village of Rockville Centre Police Sergeant, ("plaintiff" or "Sergeant Beatty") brought this action alleging four claims, pursuant to 42 U.S.C. § 1983 and related New York State laws, against James Vafeades ("Vafeades"), the former Police Commissioner of the Incorporated Village of Rockville Centre ("Village"), and the Village (collectively, "defendants"). The first claim, under 1983, against Vafeades, alleged that he retaliated against plaintiff for engaging in protected speech concerning a matter of public concern; i.e., the failure of Vafeades to disclose his interest in a retail food business he owned and operated with two subordinate Police Officers in the Village Police Department. The second claim, also under 1983, alleged liability on the part of the Village for retaliation, under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). The third and fourth claims alleged liability based on retaliation, under, respectively, the New York State Constitution for a constitutional tort and pursuant to New York Civil Service Law § 75-b; i.e., New York's civil service "whistle blower" statute.

2.     <u>THE RESULT BELOW</u>

       After discovery was completed, Defendants moved for summary judgment. In accordance with the briefing schedule ordered by the Court, the parties submitted pre-motion letters and Statements of Undisputed Facts. On August 7, 2025, the parties appeared in Court for oral argument on the motion. At the conclusion of oral argument, the Court declined the option of ordering a formal briefing of the motion and, instead, ruled from the bench.

As the Court acknowledged, a plaintiff establishes a § 1983 First Amendment retaliation claim by showing that "(1) his or her speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him or her; and (3) there was a causal connection between this adverse action and the protected speech." *Agosto v. New York City Dep't of Educ.,* 982 F.3d 86, 94 (2d Cir. 2020). In a public employment context, a plaintiff must demonstrate, in addition, that he or she (1) spoke as a citizen; (2) on a matter of public concern. *Sousa v. Roque,* 578 F.3d 164, 70 (2d Cir. 2009) (citation omitted).

In determining that defendants were entitled to summary judgment on the 1983 claims, the Court held that while plaintiff's speech pertained to a matter of public concern, the existence of a Departmental regulation which obligated Police Officers to report "any violation of law, ordinance, rule or order of the department" (Transcript, p.53) was sufficient to compel a finding, as a matter of law, that plaintiff's speech was undertaken in the course of his official duties as a Police Sergeant. The Court went on to hold that the third cause of action was also deficient since "free speech claims under [Article 8] of the New York State Constitution are subject to the same analysis as free speech claims under the First Amendment." (Transcript, p.55). Having resolved all federal question claims in favor of defendants, the Court declined to exercise supplemental jurisdiction over the remaining New York State claim under Civil Service Law § 75-b.

On August 15, 2025, a final judgment was entered "that summary judgment is granted in favor of defendants on plaintiff's first three claims; that the Court declines to exercise jurisdiction on plaintiff's fourth claim; and that this case is closed.in favor defendants."

3.    COPY OF THE NOTICE OF APPEAL AND CURRENT COPY OF THE LOWER COURT DOCKET SHEET

Copies of both the notice of appeal and a current docket sheet are attached as supporting documents.

4.    COPY OF ALL RELEVENT OPINIONS/ORDERS FORMING THE BASIS FOR THE APPEAL

Copies of the following are attached as supporting documents;

a.    Transcript of August 7, 2025 Pre-Motion Conference Before the Honorable Gary Brown;

b.    Judgment dated August 15, 2025.

DATED: Smithtown, New York
        September 18, 2025

2

SCHAEFER LAW GROUP, P.C.

/s/
_____

Wayne J. Schaefer, Esq.
*Attorneys for Plaintiff-Appellant,*
JOHN BEATTY
22 Lawrence Avenue, Suite 301
Smithtown, New York 11787-3619
Tel. (631) 382-4800
Fax: (631) 382-4801

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JOHN BEATTY,

**NOTICE OF APPEAL**

    Plaintiff,

Case No. 2:23-cv-01373

   -against-

JAMES VAFEADES, Individually, and in his capacity
As Police Commissioner and the Incorporated Village
of Rockville Centre, and THE INCORPORATED VILLAGE
OF ROCKVILLE CENTRE,
      Defendants.
-------------------------------------------------------------X

   Notice is hereby given that plaintiff, JOHN BEATTY hereby appeals to the United States

Court of Appeals for the Second Circuit from the Judgment, entered on August 15, 2025, and

from each and every part thereof.

Dated: Smithtown, New York
   September 4, 2025

       Yours, etc.

       SCHAEFER LAW GROUP, P.C.

           /s/
       Wayne J. Schaefer, Esq.
       *Attorney for Plaintiff,*
       *JOHN BEATTY*
       22 Lawrence Avenue, Suite 301
       Smithtown, New York 11787
       Tel. (631) 382-4800

APPEAL,ACO,MEDSNR

**U.S. District Court**
**Eastern District of New York (Central Islip)**
**CIVIL DOCKET FOR CASE #: 2:23-cv-01373-GRB-ARL**

Beatty v. Vafeades et al
Assigned to: Judge Gary R. Brown
Referred to: Magistrate Judge Arlene R. Lindsay
Demand: $10,000,000
Cause: 42:1983 Civil Rights Act

Date Filed: 02/21/2023
Date Terminated: 08/15/2025
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Mediator**

**Patrick Michael McKenna**

**Plaintiff**

**John Beatty**                             represented by **Wayne J. Schaefer**
                                            Schaefer Law Group, P.C.
                                            186 West Main Street
                                            Smithtown, NY 11747
                                            631-382-4800
                                            Email: wjs@schaeferlawgroup.com
                                            *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**James Vafeades**                          represented by **Adam Granek Guttell**
*Individually, and in his capacity as Police Commissioner of the*   Jackson Lewis, P.C.
*Incorporated Village of Rockville Centre*   58 South Service Road
                                            Suite 250
                                            Melville, NY 11747
                                            631-247-0404
                                            Fax: 631-247-0417
                                            Email: adam.guttell@jacksonlewis.com
                                            *TERMINATED: 08/29/2024*
                                            *LEAD ATTORNEY*
                                            *ATTORNEY TO BE NOTICED*

                                            **Chelsea Ella Weisbord**
                                            Sokoloff Stern LLP
                                            179 Westbury Avenue
                                            Carle Place, NY 11514
                                            (516)334-4500
                                            Fax: (516)334-4501
                                            Email: cweisbord@sokoloffstern.com
                                            *ATTORNEY TO BE NOTICED*

                                            **Cliff LaFemina**
                                            Jackson Lewis P.C.
                                            58 South Service Road
                                            Suite 250
                                            Melville, NY 11747
                                            631-247-0404
                                            Email: cliff.lafemina@jacksonlewis.com
                                            *TERMINATED: 08/29/2024*
                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**The Incorporated Village of Rockville Centre**   represented by **Adam Granek Guttell**
                                            (See above for address)
                                            *TERMINATED: 08/29/2024*
                                            *LEAD ATTORNEY*
                                            *ATTORNEY TO BE NOTICED*

                                            **Chelsea Ella Weisbord**
                                            (See above for address)
                                            *ATTORNEY TO BE NOTICED*

                                            **Cliff LaFemina**
                                            (See above for address)
                                            *TERMINATED: 08/29/2024*
                                            *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/21/2023 | 1 | COMPLAINT against All Defendants filing fee $ 402, receipt number ANYEDC-16429059 Was the Disclosure Statement on Civil Cover Sheet completed -NO,, filed by John Beatty. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (Schaefer, Wayne) (Entered: 02/21/2023) |
| 02/22/2023 | | Notice: Re: Incomplete Civil Cover Sheet. A Civil Cover Sheet was not filed; the Clerk's Office cannot assign this case without a Civil Cover Sheet. Counsel is directed to submit the Civil Cover Sheet using the event Proposed Summons/Civil Cover Sheet. (LJ) (Entered: 02/22/2023) |

| | | |
|---|---|---|
| 02/22/2023 | 2 | Civil Cover Sheet.. by John Beatty (Schaefer, Wayne) (Entered: 02/22/2023) |
| 02/22/2023 | 3 | Proposed Summons. by John Beatty (Schaefer, Wayne) (Entered: 02/22/2023) |
| 02/22/2023 | 4 | Proposed Summons. by John Beatty (Schaefer, Wayne) (Entered: 02/22/2023) |
| 02/23/2023 | 5 | This attorney case opening filing has been checked for quality control. See the attachment for corrections that were made. (LJ) (Entered: 02/23/2023) |
| 02/23/2023 | | Case Assigned to Judge Gary R. Brown and Magistrate Judge Arlene R. Lindsay. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (LJ) (Entered: 02/23/2023) |
| 02/23/2023 | 6 | In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 72.1, the parties are notified that *if* all parties consent a United States magistrate judge of this court is available to conduct all proceedings in this civil action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blank copy of the consent form that should be filled out, signed and filed electronically **only if** all parties wish to consent. The form may also be accessed at the following link: http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf. **You may withhold your consent without adverse substantive consequences.** Do NOT return or file the consent **unless** all parties have signed the consent. (LJ) (Entered: 02/23/2023) |
| 02/23/2023 | 7 | Summons Issued as to All Defendants. (LJ) (Entered: 02/23/2023) |
| 03/16/2023 | 8 | WAIVER OF SERVICE Returned Executed by John Beatty. James Vafeades waiver sent on 3/13/2023, answer due 5/12/2023. (Schaefer, Wayne) (Entered: 03/16/2023) |
| 03/16/2023 | 9 | WAIVER OF SERVICE Returned Executed by John Beatty. The Incorporated Village of Rockville Centre waiver sent on 3/13/2023, answer due 5/12/2023. (Schaefer, Wayne) (Entered: 03/16/2023) |
| 03/30/2023 | 10 | NOTICE of Appearance by Adam Granek Guttell on behalf of The Incorporated Village of Rockville Centre, James Vafeades (aty to be noticed) (Guttell, Adam) (Entered: 03/30/2023) |
| 03/30/2023 | 11 | NOTICE of Appearance by Cliff LaFemina on behalf of The Incorporated Village of Rockville Centre, James Vafeades (aty to be noticed) (LaFemina, Cliff) (Entered: 03/30/2023) |
| 05/12/2023 | 12 | DISCLOSURE of Interested Parties by The Incorporated Village of Rockville Centre. (Guttell, Adam) (Entered: 05/12/2023) |
| 05/12/2023 | 13 | MOTION for pre motion conference by The Incorporated Village of Rockville Centre, James Vafeades. (Guttell, Adam) Modified on 5/26/2023 to edit to a motion(JC). (Entered: 05/12/2023) |
| 05/30/2023 | | ORDER granting 13 Motion for Pre Motion Conference. A pre-motion telephone conference is scheduled for August 11, 2023 at 10:30 AM before Judge Gary R. Brown, at which time the parties should be prepared to address Defendants' anticipated motion pursuant to Rule 12 of the Federal Rules of Civil Procedure. DE 13. The parties are to call (888) 363-4734 using ACCESS CODE 4132441 five minutes prior to the designated time. The parties are on notice that in appropriate cases, the pre-motion letter and the response, along with the parties' arguments made at the pre-motion conference, may be construed at the discretion of the Court as the motion itself. Arguments not raised in the pre-motion letters or during the pre-motion conference shall be deemed waived. See In re Best Payphones, Inc., 450 F. App'x 8, 15 (2d Cir. 2011). At the conference, the Court will issue a briefing schedule if necessary. Plaintiffs are directed to respond to DE 13 in accordance with the undersigned's individual rules by June 30, 2023. Defendant's request to exceed the Court's two-page limit is GRANTED. As such, Plaintiff is permitted to file a letter totaling up to three pages in response. Before requesting an adjournment, the parties shall meet and confer and submit a joint letter with several proposed dates. The parties and other attendees to the conference are also reminded that the recording of any proceeding of the Court, including this conference, is prohibited under Local Rule 1.8. Ordered by Judge Gary R. Brown on 5/30/2023. (MR) (Entered: 05/30/2023) |
| 06/05/2023 | 14 | SCHEDULING ORDER: Rule 26 Meeting Report due by July 7, 2023. See the attached Order for details. Ordered by Magistrate Judge Arlene R. Lindsay on 6/5/2023. (Attachments: # 1 Rule 26(f) form) c/ecf (RI) (Entered: 06/05/2023) |
| 06/27/2023 | 15 | First MOTION for Extension of Time to File Response/Reply as to Order on Motion for Pre Motion Conference,,,,, *Extension of Time to File Response to Arguments Raised in Defendants' Letter Request for Pre-Motion Conference (DE 13)* by John Beatty. (Schaefer, Wayne) (Entered: 06/27/2023) |
| 06/27/2023 | 16 | Letter MOTION to Amend/Correct/Supplement 15 First MOTION for Extension of Time to File Response/Reply as to Order on Motion for Pre Motion Conference,,,,, *Extension of Time to File Response to Arguments Raised in Defendants' Letter Request for Pre-Motion Conference (DE 13) ; Supplemental Letter Submission to Reflect Defendants' Consent to Request for Extension of Time to File Response (DE 15)* by John Beatty. (Schaefer, Wayne) (Entered: 06/27/2023) |
| 06/28/2023 | | ORDER terminating 15 Motion for Extension of Time to File Response/Reply re 15 . Ordered by Judge Gary R. Brown on 6/28/2023. (MR) (Entered: 06/28/2023) |
| 06/28/2023 | | ORDER granting 16 Motion to Amend/Correct/Supplement. On consent, plaintiff's request for an extension of time to respond to defendants' pre-motion letter, DE 13, is GRANTED. Plaintiff shall file their responsive letter on or before July 7, 2023. Ordered by Judge Gary R. Brown on 6/28/2023. (MR) (Entered: 06/28/2023) |
| 07/03/2023 | 17 | MOTION for Extension of Time to File *Rule 26(f) Report* by The Incorporated Village of Rockville Centre, James Vafeades. (LaFemina, Cliff) (Entered: 07/03/2023) |
| 07/05/2023 | | ORDER re 17 : The time to submit the Rule 26(f) Report is extended to and including August 17, 2023. Ordered by Magistrate Judge Arlene R. Lindsay on 7/5/2023. c/ecf (RI) (Entered: 07/05/2023) |
| 07/07/2023 | 18 | Letter *Response to Defendants' Motion for Pre-Motion Conference (DE 13)* by John Beatty (Schaefer, Wayne) (Entered: 07/07/2023) |
| 08/11/2023 | | Minute Entry for proceedings held before Judge Gary R. Brown:Pre Motion Conference held on 8/11/2023. Wayne Schaefer and Adam Guttell present. Motion argued, deemed made and denied for reasons stated on the record. (FTR Log #AT&T 10:28-10:46.) (KM) (Entered: 08/14/2023) |
| 08/17/2023 | 19 | REPORT of Rule 26(f) Planning Meeting (Guttell, Adam) (Entered: 08/17/2023) |
| 08/17/2023 | | SCHEDULING ORDER: An Initial Conference is scheduled for September 20, 2023 at 11:30 a.m. by telephone before Magistrate Judge Arlene R. Lindsay. The parties are directed to dial (888) 684-8852 prior to the scheduled time to access the call center. At the prompt enter access code 7625765. If any party has any difficulty accessing the telephone conference, please contact chambers at (631) 712-5730. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Ordered by Magistrate Judge Arlene R. Lindsay on 8/17/2023. c/ecf (RI) (Entered: 08/17/2023) |
| 08/25/2023 | 20 | ANSWER to 1 Complaint, by The Incorporated Village of Rockville Centre, James Vafeades. (Guttell, Adam) (Entered: 08/25/2023) |
| 09/15/2023 | | ORDER: Due to a change in the Court's calendar, the September 20, 2023 conference is adjourned to September 21, 2023 at 11:30 a.m. The parties are directed to dial (888) 684-8852 prior to the scheduled time to access the call center. At the prompt enter access code 7625765. Should the new date create a conflict for the parties, a brief adjournment may be requested. Ordered by Magistrate Judge Arlene R. Lindsay on 9/15/2023. c/ecf (RI) (Entered: 09/15/2023) |
| 09/21/2023 | 21 | Minute Entry for proceedings held before Magistrate Judge Arlene R. Lindsay on 9/21/2023. The parties proposed schedule is approved and will be entered under a separate Order. Should the parties wish to pursue mediation, a joint letter may be submitted. c/ecf (RI) (Entered: 09/21/2023) |
| 09/21/2023 | 22 | SCHEDULING ORDER: A Final Conference is scheduled for September 19, 2024 at 11:00 AM before Magistrate Judge Arlene R. Lindsay. See the attached Order for details.Ordered by Magistrate Judge Arlene R. Lindsay on 9/21/2023. c/ecf (RI) (Entered: 09/21/2023) |

| | | |
|---|---|---|
| 10/17/2023 | 23 | Letter *requesting we pursue mediation* by The Incorporated Village of Rockville Centre, James Vafeades (Guttell, Adam) Modified on 10/18/2023 (RI). (Entered: 10/17/2023) |
| 10/18/2023 | | ORDER re 23 : The matter is referred to mediation which shall be completed by December 19, 2023. Ordered by Magistrate Judge Arlene R. Lindsay on 10/18/2023. c/ecf (RI) (Entered: 10/18/2023) |
| 10/18/2023 | | MEDIATION INSTRUCTIONS for Counsel are available at: https://www.nyed.uscourts.gov/adr-forms.<br><br>Counsel are to select a mediator, schedule the first mediation session, and file the name of the mediator, date, time and place (in-person or remote) of the first mediation session via CM/ECF using the event Selection of Mediator. For a list of the EDNY Mediators and their qualifications, see the Court's website at https://www.nyed.uscourts.gov/adr/Mediation/displayAll.cfm. EDNY Mediators are compensated in accordance with EDNY Local Civil Rule 83.8(f)(1)[formerly EDNY Local Civil Rule 83.11(f)(1)].<br><br>The Confidentiality Stipulation is available at: https://www.nyed.uscourts.gov/adr-forms. The Confidentiality Stipulation (in-person or remote) must be signed at or before the initial mediation session by all participants and the Mediator and returned via e-mail to nyed_adr@nyed.uscourts.gov.<br><br>Upon completion of the mediation, both parties must submit a Mediation Report which can be found at: https://www.nyed.uscourts.gov/adr-forms. The Mediation Report must be submitted within two weeks following mediation session. (JR) (Entered: 10/18/2023) |
| 12/15/2023 | 24 | Letter MOTION for Extension of Time to File Response/Reply to *after January 18, 2024, to complete mediation* by The Incorporated Village of Rockville Centre, James Vafeades. (Guttell, Adam) (Entered: 12/15/2023) |
| 12/18/2023 | | ORDER granting 24 Motion for Extension of Time to complete mediation. The mediation shall be completed by January 22, 2024. Ordered by Magistrate Judge Arlene R. Lindsay on 12/18/2023. (BJ) (Entered: 12/18/2023) |
| 01/04/2024 | 25 | SELECTION OF MEDIATOR Patrick Michael McKenna selected as Mediator. Date Time and Location in-person/remote:January 18, 2024 10:00 am remote Fourteen days on or before the session date, counsel shall file with the Mediator their client's mediation statement summarizing the facts, legal issues, particulars of any prior settlement discussions, and the name and title of the client or client representative with full settlement authority who will attend the mediation. For more details on the submission, please consult Local Civil Rule 83.8(b)(4). Attendance is required of the trial attorney, insurance adjuster, and client or client representative with full settlement authority. The Confidentiality Stipulation (in-person or remote) must be signed at or before the initial mediation session by all participants and the Mediator and returned via e-mail to nyed_adr@nyed.uscourts.gov. The Mediators contact information can be found on the docket sheet. Within fourteen days of the conclusion of the mediation, both parties must submit a Mediation Report. (Guttell, Adam) (Entered: 01/04/2024) |
| 01/31/2024 | | REPORT of Mediation Unsettled. Both parties must submit a Mediation Report which can be found at: https://www.nyed.uscourts.gov/adr-forms. The Mediation Report must be submitted within two weeks following mediation session.Mediation Report due by 2/14/2024. (JR) (Entered: 01/31/2024) |
| 06/14/2024 | 26 | First MOTION for Extension of Time to Complete Discovery by John Beatty. (Schaefer, Wayne) (Entered: 06/14/2024) |
| 06/17/2024 | | ORDER granting 26 Motion for Extension of Time to Complete Discovery. The scheduling order is modified as follows: All discovery, inclusive of expert discovery, to be concluded by August 19, 2024. Any party planning on making a dispositive motion must take the first step in the motion process by September 13, 2024. The parties are to electronically file a joint proposed pretrial order in compliance with the district judge's individual rules, signed by counsel for each party, on or before October 14, 2024. The September 19, 2024 final conference is adjourned to October 17, 2024 at 11:30 a.m. Ordered by Magistrate Judge Arlene R. Lindsay on 6/17/2024. (BJ) (Entered: 06/17/2024) |
| 08/01/2024 | 27 | Letter MOTION for Extension of Time to Complete Discovery by The Incorporated Village of Rockville Centre, James Vafeades. (Guttell, Adam) (Entered: 08/01/2024) |
| 08/02/2024 | | ORDER granting 27 : The scheduling order is modified as follows: All discovery, inclusive of expert discovery, to be concluded by September 18, 2024. Any party planning on making a dispositive motion must take the first step in the motion process by October 14, 2024. The parties are to electronically file a joint proposed pretrial order in compliance with the district judge's individual rules, signed by counsel for each party, on or before November 14, 2024. The October 17, 2024 final conference is adjourned to November 19, 2024 at 11:00 a.m. Ordered by Magistrate Judge Arlene R. Lindsay on 8/2/2024. c/ecf (RI) (Entered: 08/02/2024) |
| 08/27/2024 | 28 | NOTICE of Appearance by Chelsea Ella Weisbord on behalf of All Defendants (aty to be noticed) (Weisbord, Chelsea) (Entered: 08/27/2024) |
| 08/27/2024 | 29 | STIPULATION *AND ORDER FOR SUBSTITUTION OF COUNSEL* by The Incorporated Village of Rockville Centre, James Vafeades (LaFemina, Cliff) Modified on 8/29/2024 (RI). (Entered: 08/27/2024) |
| 08/27/2024 | 30 | Letter *(1) In Response to Proposed Order Substituting Counsel for All Defendants; (2) Requesting Telephone Conference* by John Beatty (Schaefer, Wayne) (Entered: 08/27/2024) |
| 08/28/2024 | 31 | Letter *Correcting and Supplementing August 27, 2024 Letter [Doc. 30]* by John Beatty (Schaefer, Wayne) (Entered: 08/28/2024) |
| 08/28/2024 | 32 | Letter *Response to Plaintiff's Counsel August 27, 2024 letter (ECF Doc. 30)* by The Incorporated Village of Rockville Centre, James Vafeades (Weisbord, Chelsea) (Entered: 08/28/2024) |
| 08/29/2024 | | ORDER re 29 : Plaintiffs challenge to Defendants stipulation substituting counsel is rejected. "Under New York law, a client has an absolute right to change attorneys." Matter of First City Nat'l Bank & Trust Co., 759 F. Supp. 1048, 1051 (S.D. N.Y. 1991). The fact the Defendants have retained new counsel signals that defendants are not pleased with their prior counsel and provides justification for the motion to substitute. Pfeffer v. Mark, 98-CV-6771(ILG), 2000 U.S. Dist. LEXIS 7227, 2000 WL 709012 (E.D.N.Y. Apr. 27, 2000). The parties are directed to meet and confer within the next fourteen days to resolve any outstanding discovery issues. (Attorney Chelsea Ella Weisbord added, attorneys Adam Granek Guttell and Cliff LaFemina terminated.) c/ecf Ordered by Magistrate Judge Arlene R. Lindsay on 8/29/2024. (RI) (Entered: 08/29/2024) |
| 09/10/2024 | 33 | Letter MOTION for Extension of Time to Complete Discovery *(Joint Letter)* by The Incorporated Village of Rockville Centre, James Vafeades. (Weisbord, Chelsea) (Entered: 09/10/2024) |
| 09/12/2024 | | ORDER re 33 : The scheduling order is modified as follows: All discovery, inclusive of expert discovery, to be concluded by December 14, 2024. Any party planning on making a dispositive motion must take the first step in the motion process by January 13, 2025. The parties are to electronically file a joint proposed pretrial order in compliance with the district judge's individual rules, signed by counsel for each party, on or before February 11, 2025. The November 19, 2024 final conference is adjourned to February 13, 2025 at 11:30 a.m. This is the third request for an extension. No further extensions will be provided absent a showing of good cause. Ordered by Magistrate Judge Arlene R. Lindsay on 9/12/2024. c/ecf (RI) (Entered: 09/12/2024) |
| 10/23/2024 | 34 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 08/11/2023, for hearing type Pre Motion Conference, before Judge Gary R. Brown. Transcriber Transcription Plus II, Inc., Telephone number 917-817-2825. Email address: rl.transcriptions2@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/13/2024. Redacted Transcript Deadline set for 11/25/2024. Release of Transcript Restriction set for 1/21/2025. (CG) (Entered: 10/23/2024) |
| 11/25/2024 | 35 | STIPULATION *Proposed Confidentiality Order* by James Vafeades, The Incorporated Village of Rockville Centre (Weisbord, Chelsea) (Entered: 11/25/2024) |
| 11/26/2024 | | ORDER re 35 Stipulation filed by James Vafeades, The Incorporated Village of Rockville Centre. The parties' request that the Court so order the attached stipulation is denied without prejudice. The parties have failed to sign the stipulation and additionally, paragraph 14 shall be stricken from the stipulation before it is resubmitted to the Court.Ordered by Magistrate Judge Arlene R. Lindsay on 11/26/2024. (BJ) (Entered: 11/26/2024) |

| 11/26/2024 | 36 | STIPULATION re Order, *corrected proposed confidentiality Order* by James Vafeades, The Incorporated Village of Rockville Centre (Weisbord, Chelsea) Modified on 11/27/2024 (RI). (Entered: 11/26/2024) |
|---|---|---|
| 11/27/2024 | | ORDER re 36 : The proposed confidentiality Order is approved. Ordered by Magistrate Judge Arlene R. Lindsay on 11/27/2024. c/ecf (RI) (Entered: 11/27/2024) |
| 12/05/2024 | 37 | Letter MOTION for Extension of Time to Complete Discovery *(submitted jointly with Plaintiff)* by James Vafeades, The Incorporated Village of Rockville Centre. (Weisbord, Chelsea) (Entered: 12/05/2024) |
| 12/06/2024 | | ORDER granting 37 Motion for Extension of Time to Complete Discovery. In light of the circumstances described in the parties jint request one final extension shall be granted. All discovery, inclusive of expert discovery, to be concluded by January 28, 2025. Any party planning on making a dispositive motion must take the first step in the motion process by February 28, 2025. The parties are to electronically file a joint proposed pretrial order in compliance with the district judge's individual rules, signed by counsel for each party, on or before March 21, 2025. The February 13, 2025 final conference is adjourned to March 25, 2025 at 11:30 a.m. Ordered by Magistrate Judge Arlene R. Lindsay on 12/6/2024. (BJ) (Entered: 12/06/2024) |
| 01/26/2025 | 38 | MOTION for Extension of Time to Complete Discovery by James Vafeades, The Incorporated Village of Rockville Centre. (Weisbord, Chelsea) (Entered: 01/26/2025) |
| 01/28/2025 | 39 | Letter MOTION for Extension of Time to Complete Discovery *re: supplement to January 26 extension request* by James Vafeades, The Incorporated Village of Rockville Centre. (Weisbord, Chelsea) (Entered: 01/28/2025) |
| 01/29/2025 | 40 | RESPONSE in Opposition re 38 MOTION for Extension of Time to Complete Discovery , 39 Letter MOTION for Extension of Time to Complete Discovery *re: supplement to January 26 extension request* filed by John Beatty. (Schaefer, Wayne) (Entered: 01/29/2025) |
| 01/29/2025 | 41 | RESPONSE in Opposition re 38 MOTION for Extension of Time to Complete Discovery , 39 Letter MOTION for Extension of Time to Complete Discovery *re: supplement to January 26 extension request (Supplement to Plaintiff's Previously Filed Opposition [Doc. No. 40])* filed by John Beatty. (Schaefer, Wayne) (Entered: 01/29/2025) |
| 02/18/2025 | | ORDER granting 38 39 Motion for Extension of Time to Complete Discovery. In light of the circumstances described in Defendants' request one final extension shall be granted. All discovery, inclusive of expert discovery, to be concluded by March 18, 2025. Any party planning on making a dispositive motion must take the first step in the motion process by March 31, 2025. The parties are to electronically file a joint proposed pretrial order in compliance with the district judge's individual rules, signed by counsel for each party, on or before April 21, 2025. The March 25, 2025 final conference is adjourned to April 24, 2025 at 12:30 p.m. Ordered by Magistrate Judge Arlene R. Lindsay on 2/18/2025. (BJ) (Entered: 02/18/2025) |
| 02/18/2025 | 42 | Letter *to the Court requesting deadlines to commence summary judgment practice be held in abeyance* by The Incorporated Village of Rockville Centre, James Vafeades (Weisbord, Chelsea) Modified on 2/19/2025 (RI). (Entered: 02/18/2025) |
| 02/19/2025 | | ORDER re 42 : The application is denied as a revised schedule was set pursuant to the Court's Order dated February 18, 2025. Ordered by Magistrate Judge Arlene R. Lindsay on 2/19/2025. c/ecf (RI) (Entered: 02/19/2025) |
| 03/26/2025 | 43 | Letter MOTION for Extension of Time to File / *commence summary judgment practice with Plaintiff's consent* by The Incorporated Village of Rockville Centre, James Vafeades. (Weisbord, Chelsea) (Entered: 03/26/2025) |
| 03/27/2025 | | ORDER granting 43 Motion for Extension of Time to File. Any party planning on making a dispositive motion must take the first step in the motion process by April 30, 2025. Any response to any pre-motion letters in anticipation of moving for summary judgment shall be filed by May 21, 2025. The parties are to electronically file a joint proposed pretrial order in compliance with the district judge's individual rules, signed by counsel for each party, on or before June 6, 2025. The April 24, 2025 final conference is adjourned to June 10, 2025 at 12:30 p.m. Ordered by Magistrate Judge Arlene R. Lindsay on 3/27/2025. (BJ) (Entered: 03/27/2025) |
| 04/30/2025 | 44 | MOTION for Extension of Time to File *Summary Judgment Motion* by The Incorporated Village of Rockville Centre, James Vafeades. (Weisbord, Chelsea) (Entered: 04/30/2025) |
| 04/30/2025 | 45 | RESPONSE to Motion re 44 MOTION for Extension of Time to File *Summary Judgment Motion* filed by John Beatty. (Schaefer, Wayne) (Entered: 04/30/2025) |
| 05/01/2025 | | ORDER granting 44 Motion for Extension of Time to File. Any party planning on making a dispositive motion must take the first step in the motion process by May 2, 2025. Any response to any pre-motion letters in anticipation of moving for summary judgment shall be filed by May 23, 2025. Ordered by Magistrate Judge Arlene R. Lindsay on 5/1/2025. (BJ) (Entered: 05/01/2025) |
| 05/02/2025 | 46 | Letter MOTION for Leave to Electronically File Document under Seal - *in anticipation of moving for summary judgment* by The Incorporated Village of Rockville Centre, James Vafeades. (Attachments: # 1 Exhibit Ex. K) (Weisbord, Chelsea) (Entered: 05/02/2025) |
| 05/03/2025 | 47 | MOTION for Extension of Time to File *Summary Judgment (request for three hour extension due to internet connectivity issues)* by The Incorporated Village of Rockville Centre, James Vafeades. (Weisbord, Chelsea) (Entered: 05/03/2025) |
| 05/03/2025 | 48 | MOTION for pre motion conference *in anticipation of moving for summary judgment* by The Incorporated Village of Rockville Centre, James Vafeades. (Attachments: # 1 Rule 56.1 Statement, # 2 Declaration, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I, # 12 Exhibit J, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N) (Weisbord, Chelsea) (Entered: 05/03/2025) |
| 05/05/2025 | | ORDER granting 48 Motion for Pre Motion Conference. An IN-PERSON premotion conference is scheduled for July 24, 2025 at 10:30 AM before Judge Gary R. Brown, Courtroom 940, 100 Federal Plaza, Central Islip, NY, at which time the parties should be prepared to address Defendants' anticipated motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. Counsel shall appear at such time with their clients. Plaintiff shall respond to DE 48 in accordance with the undersigned's individual rules, see Rule II(g), by June 26, 2025. |
| | | Counsel should note that, in appropriate cases, the pre-motion letter as well as the response, along with counsels' arguments at the pre-motion conference, may be construed, at the discretion of the Court, as the motion itself. Arguments not raised in the pre-motion letters or during the pre-motion conference shall be deemed waived. See In re Best Payphones, Inc., 450 F. App'x 8, 15 (2d Cir. 2011). At the conference, the Court will issue a briefing schedule if necessary. Before requesting an adjournment, the parties shall meet and confer and submit a joint letter with several proposed dates. |
| | | The parties and other attendees to the conference are also reminded that the recording of any proceeding of the Court, including this conference, is prohibited under Local Rule 1.8. Ordered by Judge Gary R. Brown on 5/5/2025. (ML) (Entered: 05/05/2025) |
| 06/05/2025 | 49 | Letter MOTION to Adjourn Conference *and Confirm Extension of Time to File proposed Joint Pre-Trial Order* by John Beatty. (Schaefer, Wayne) (Entered: 06/05/2025) |
| 06/06/2025 | | ORDER re 49 : In light of the anticipated motion, the June 10, 2025, conference and the deadline to submit the proposed joint pretrial order are adjourned without date. The parties are directed to submit a joint status report following the scheduled pre-motion conference. Ordered by Magistrate Judge Arlene R. Lindsay on 6/6/2025. c/ecf (RI) (Entered: 06/06/2025) |
| 06/19/2025 | 50 | Joint MOTION to Adjourn Conference *and Extend Time for Plaintiff to File Response to Pre-Motion Letter and Local Civil Rule 56.1 Response* by John Beatty. (Schaefer, Wayne) (Entered: 06/19/2025) |
| 06/20/2025 | | ORDER denying 50 Motion to Adjourn Conference, The conference is before Judge Brown, and the deadlines for filing of motions papers were set by Judge Brown. Accordingly, any request for an extension must be made to Judge Brown directly. Ordered by Magistrate Judge Arlene R. Lindsay on 6/20/2025. (BJ) (Entered: 06/20/2025) |

| 06/20/2025 | 51 | Joint MOTION to Adjourn Conference *and Extend Time for Plaintiff to file Response to Defendants' Pre-Motion Letter and to File Local Rule 56.1 Response (Renewed Motion)* by John Beatty. (Schaefer, Wayne) (Entered: 06/20/2025) |
| 06/25/2025 | | ORDER granting 51 Motion to Adjourn Conference: The pre-motion conference scheduled for July 24 is adjourned to August 7, 2025 at 10:30 am. Plaintiff shall respond to defendant's pre-motion letter and file a Local Rule 56.1 Response by July 10. All other requirements from the May 5 Order remain in effect, including the in-person attendance of clients. Ordered by Judge Gary R. Brown on 6/25/2025. (ML) (Entered: 06/25/2025) |
| 07/07/2025 | 52 | Letter MOTION for Extension of Time to File Response/Reply as to Order on Motion for Pre Motion Conference,,,,, *and to File Response to Defendants' Pre-Motion Letter and Local Civil Rule 56.1 Statement of Uncontested Facts* by John Beatty. (Schaefer, Wayne) (Entered: 07/07/2025) |
| 07/07/2025 | 53 | Amended MOTION for Extension of Time to File Response/Reply as to Order on Motion for Pre Motion Conference,,,,, *and to File Response to Defendants' Pre-Motion Letter and Local Civil Rule 56.1 Statement of Uncontested Facts* by John Beatty. (Schaefer, Wayne) (Entered: 07/07/2025) |
| 07/08/2025 | | ORDER granting 53 Motion for Extension of Time to File Response/Reply. Plaintiff's motion to extend the time to respond to defendant's pre-motion letter and Rule 56.1 statement until July 14, 2025 is granted, on consent. Ordered by Judge Gary R. Brown on 7/8/2025. (ML) (Entered: 07/08/2025) |
| 07/08/2025 | | ORDER withdrawing 52 Motion for Extension of Time to File Response/Reply. Ordered by Judge Gary R. Brown on 7/8/2025. (ML) (Entered: 07/08/2025) |
| 07/12/2025 | 54 | Emergency MOTION for Extension of Time to File *Response to Defendants' Pre-Motion Letter and Local Civil Rule 56.1 Statement of Uncontested Facts* by John Beatty. (Schaefer, Wayne) (Entered: 07/12/2025) |
| 07/14/2025 | | ORDER granting 54 Motion for Extension of Time to File. On consent, plaintiff's motion for an extension of time to respond to defendant's pre-motion letter and Rule 56.1 statement is granted. Ordered by Judge Gary R. Brown on 7/14/2025. (ML) (Entered: 07/14/2025) |
| 07/17/2025 | 55 | Letter MOTION for pre motion conference *Response to Defendants' Pre-Motion Letter and Local Civil Rule 56.1 Statement of Uncontested Facts* by John Beatty. (Schaefer, Wayne) Modified on 8/7/2025 to terminate. See 59 Minute (JC). (Entered: 07/17/2025) |
| 07/17/2025 | 56 | RULE 56.1 STATEMENT *Response to Defendants' Local Civil Rule 56.1 Statement of Uncontested Facts* filed by John Beatty. (Schaefer, Wayne) (Entered: 07/17/2025) |
| 07/17/2025 | 57 | AFFIDAVIT/DECLARATION in Opposition re 55 Letter MOTION for pre motion conference *Response to Defendants' Pre-Motion Letter and Local Civil Rule 56.1 Statement of Uncontested Facts Declaration in Support of Plaintiff's Response to Defendants' Pre-Motion Letter and Local Civil Rule 56.1 Statement of Uncontested Facts* filed by John Beatty. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8) (Schaefer, Wayne) (Entered: 07/18/2025) |
| 07/30/2025 | 58 | Letter MOTION to Appear by Telephone/Video *for James Vafeades for the pre-motion conference on August 7th* by The Incorporated Village of Rockville Centre, James Vafeades. (Weisbord, Chelsea) (Entered: 07/30/2025) |
| 08/04/2025 | | ORDER granting 58 Motion to Appear by Telephone/Video. Defendant Vafeades may appear remotely for the 8/7 pre-motion conference. Ordered by Judge Gary R. Brown on 8/4/2025. (ML) (Entered: 08/04/2025) |
| 08/06/2025 | | NOTICE re Order on Motion to Appear by Telephone/Video : The party will call 571-353-2301 using Access code 975 842 145 at least 5 minutes prior to the conference. (KM) (Entered: 08/06/2025) |
| 08/07/2025 | 59 | Minute Entry for proceedings held before Judge Gary R. Brown: Pre Motion Conference for Summary Judgment held on 8/7/2025. APPEARANCES: Plaintiff: Wayne J. Schaefer; Defendant: Chelsea Ella Weisbord. Counsel for all sides present. Pre-motion conference held. Motion argued. The Court deems the motion made. Other: For the reasons set forth on the record, summary judgment in favor of defendants on plaintiff's fourth claim. The case is deemed closed and the clerk is directed to enter judgment. (Court Reporter Toni Ann Lucatorto.) (JC) (Entered: 08/07/2025) |
| 08/15/2025 | 60 | CLERK'S JUDGMENT: ORDERED AND ADJUDGED that plaintiff John Beatty take nothing of defendants James Vafeaedes and the Incorporated Village of Rockville Centre; that summary judgment is granted in favor of defendants on plaintiff's first three claims; that the Court declines to exercise jurisdiction on plaintiff's fourth claim; and that this case is closed. Ordered by Clerk of Court on 8/15/2025. (JT) (Entered: 08/15/2025) |
| 09/04/2025 | 61 | NOTICE OF APPEAL as to 60 Clerk's Judgment, by John Beatty. Filing fee $ 605, receipt number ANYEDC-19412356. Appeal Record due by 9/18/2025. (Schaefer, Wayne) (Entered: 09/04/2025) |
| 09/04/2025 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 61 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (KS) (Entered: 09/04/2025) |

| PACER Service Center | | | |
| --- | --- | --- | --- |
| Transaction Receipt | | | |
| 09/18/2025 22:44:12 | | | |
| PACER Login: | worldb5717 | Client Code: | Beatty |
| Description: | Docket Report | Search Criteria: | 2:23-cv-01373-GRB-ARL |
| Billable Pages: | 10 | Cost: | 1.00 |

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X
BEATTY,                          :  23-CV-1373(GRB)
                                 :
        Plaintiff,               :
                                 :
                                 :  United States Courthouse
    -against-                    :  Central Islip, New York
                                 :
                                 :
                                 :
                                 :  Thursday, August 7, 2025
VAFEADES,                        :  10:30 A.M.
                                 :
        Defendant.               :
                                 :
- - - - - - - - - - - - - - - - X

TRANSCRIPT OF PRE MOTION CONFERENCE
BEFORE THE HONORABLE JUDGE GARY BROWN

A P P E A R A N C E S:

For the Plaintiff:     SCHAEFER LAW GROUP, P.C.
                       186 WEST MAIN STREET
                       SMITHTOWN, NY 11747
                       BY: WAYNE SCHAEFER, ESQ.

For the Defendant:     Sokoloff Stern LLP
                       179 Westbury Avenue
                       Carle Place, NY 11514
                       BY:  CHELSEA WEISBORD, ESQ.


 Official Court Reporter:  ToniAnn Lucatorto, RMR, CRR, RPR
 E-mail:ToniAnnLucatorto@gmail.com
 Proceedings recorded by computerized stenography.
 Transcript produced by Computer-aided Transcription.

Pre Motion Conference

2

1          (In open court.)

2          THE COURTROOM DEPUTY:  Calling case civil

3     2023-13730.  Beatty versus Vafeades.

4          Counsel, please state your appearances for the

5     record.

6          MR. SCHAEFER:  For plaintiff, Wayne J. Schaefer,

7     Schaefer Law Group, P.C. 186 West Main Street, Smithtown,

8     New York, 11787.  Good morning, your Honor.

9          THE COURT:  Good morning.  Is that your client

10    with you?

11         MR. SCHAEFER:  Yes, I do, your Honor.  Mr.

12    Beatty.

13         THE COURT:  Glad you're here, sir.

14         MS. WEISBORD:  Good morning, your Honor.

15    Chelsea Weisbord from Sokoloff Stern.  I represent the

16    defendants.  Next to me is Wendy Weinstock.  She is the

17    director of HR for the village.  She is here as a

18    representative for the Village.

19         On the phone is James Vafeades, the individually

20    named defendant.  I know he's on the phone.  I think he

21    can hear what's going on.

22         THE COURT:  Sir, can you hear us?  Glad you're

23    participating and you have the power.

24         MS. WEISBORD:  Thank you very much for

25    accommodating him.

**Pre Motion Conference**

3

1    THE COURT:  It was a long way to come.  So, all

2  right.  So we are here for a pre-motion conference.  At a

3  pre-motion conference, I don't prevent anyone from making

4  motions.  You're free to make any motion you would like.

5  However, I do reserve the right, as you know from the

6  order that established this hearing, as well as my rules,

7  to deem the motion made and decide it in part or in total,

8  if I think that's appropriate, under the circumstances.

9  That turns on a few things, including whether or not

10 counsel has done a good job on briefing this, and indeed

11 you have.  Both sides did a very good job, so I appreciate

12 that.  And you gave me the 56-1 statements, which, kind of

13 zeroes in on a lot of the issues.

14    So, with that in mind, I will turn it over to

15 defense counsel to outline the motion.  And I'll just

16 remind you that I'm also listening.  So, to the extent

17 that you want to argue things that aren't in the papers,

18 if there are other things, just bring it to my attention.

19    You can go ahead.

20    MS. WEISBORD:  Of course.  Initially, if I'm

21 arguing something that comes straight from the law cite

22 and the papers and doesn't really involve anything

23 additional, should I still walk through it?

24    THE COURT:  You can assume I'm familiar with the

25 work you've done, but you can give us a quick highlight.

**Pre Motion Conference**

4

1    How about that?

2            MS. WEISBORD:  Okay.

3            So as I'm sure the Court is aware, this case

4    involves retaliation claims under the United States

5    Constitution, First Amendment, as well as state law,

6    whistleblower claims.  And I would like to start with the

7    issue of whether or not the plaintiff engaged in protected

8    activity.  And, for the reasons outlined in my letter, my

9    position is that he did not engage in protected activity.

10   And I know I was not involved in the case at the motion to

11   dismiss stage, but I did review the transcript and I'm

12   aware that there was a discussion, you know, based on the

13   pleadings as to that issue.  But I would maintain that

14   discovery has, kind of, changed the landscape of that

15   legal issue.  Particularly, you know, the evidence shows

16   that there was no, you know, corruption or misconduct

17   related to the bagel store.  It was not purchased by any

18   police officers, it was purchased by three wives of three

19   officers.  Three women deciding to buy a bagel shop

20   together, that's not a matter of public concern and it's

21   certainly not anything that would implicate the First

22   Amendment.  And I provided the Court, I believe under

23   seal, the documentation proving dispositively, that the

24   store was, in fact, purchased by the three wives and not

25   the officers.

Pre Motion Conference

5

1     THE COURT:  Given the nature of public

2  corruption and the concerns about monitoring such things,

3  don't you think that there's a broader lens that we looked

4  at that through?  I mean, you're saying, well, it's the

5  wives not the officer who bought the bagel store.  But at

6  the end of the day, you know, there's a long history in

7  this country of public corruption being achieved through

8  straw ownership and so forth.

9     Doesn't it then become a potential issue of

10  public concern?

11     MS. WEISBORD:  I'm sure there's scenarios where

12  there are, you know, issues of public corruption.  But I

13  don't think the facts present such a case.  You know, you

14  have, for instance, James Vafeades, like I said, did not

15  purchase the store, it was never on the payroll, you know

16  didn't contact any vendors.  He helped his wife open the

17  -- you know.  Did some painting, was there to, you know,

18  pick up the mail, grab a cup of coffee on his way to and

19  from work.  And there's nothing corrupt about a husband

20  visiting his wife's store or helping out.  My father owned

21  a salad store and, as his daughter, I would help out.  I

22  wouldn't be paid, I'm not an employee.  But something you

23  do for family.

24     THE COURT:  Okay.  All right.  I'm more

25  interested in your argument about private citizenship

Pre Motion Conference

6

1   whether the plaintiff could be deemed as speaking as a

2   private citizen.

3          MS. WEISBORD:  Sure.  So as you know, the

4   plaintiff was and is a Sergeant of the police department,

5   and there are department policies that require any officer

6   to report known, you know, misconduct or violation of the

7   policy.  And particularly, with the supervisor, there was

8   an extra level of reporting that goes on.  And, you know,

9   I think discovery has showed this really wasn't -- this

10   was an individual, you know, reporting something to his

11   superior really for, you know, his own personal concerns.

12   I'm aware that there's allegations that he had discussions

13   with other people that he was friendly with, but, in my

14   mind, that's not protected activity, that's gossip.  But

15   in terms of the alleged protected activity that was

16   allegedly made to the then commissioner and, the title of

17   the other officers is escaping my mind, but basically the

18   commissioner's right hand man, inspector.  You know, that

19   was, that was a report that was made through the course of

20   employment.  There was no civilian analog, and I know

21   that's not a dispositive issue, but I think that's

22   something to look at and to consider.  And, you know, I'll

23   just also refer to, you know, pages 2 and 3 of my letter

24   where I kind of lay out the case law and that, and I kind

25   of stand by that case law.  I'm happy to walk through that

**Pre Motion Conference**

7

1    but I know your Honor is very familiar.

2    THE COURT:  Look, Judge Bianco grappled with

3    very similar questions in Frisenda.  So if you're right

4    about this not being the speech of a private citizen, but

5    being part of the obligation.  That, to me, would bear on

6    the first and third causes of action.  Because that would

7    be a direct element of those two, and then the second

8    cause of action really is predicated on the first.  So it

9    would affect three of the pending causes of action, yes?

10    MS. WEISBORD:  Correct.

11    THE COURT:  Okay.  Then tell me about what

12    remains.  If that were the case, what's your position with

13    regard to the fourth cause of action here?

14    MS. WEISBORD:  Of course.

15    THE COURT:  The state law claim under New York

16    Civil Service Law 75(b).

17    MS. WEISBORD:  I am going to circle back to

18    causation, but I can --

19    THE COURT:  You can do that now if you want.

20    Whatever you would like.

21    MS. WEISBORD:  Okay, thank you.  Before I move

22    on.

23    So I just want to quickly walk through the list

24    of alleged, you know, adverse actions here.  And explain,

25    you know, why each and every one of them cannot proceed to

Pre Motion Conference

8

1  trial.  And why, you know, there's no viable retaliation

2  claim connected to it.  And I would like to start with the

3  allegations from 2017 regarding a rat photo that was found

4  in plaintiff's locker and also, sorry for my vulgar

5  language but it's part of the record.  It was a cardboard

6  penis.

7       THE COURT:  Trust me when I tell you much worse

8  things are said in this courtroom.  All of the time.  So

9  go ahead.

10      MS. WEISBORD:  And so regarding those

11 allegations, you know, the complaint alleges that those

12 items were found back in 2017.  Plaintiff testified that

13 he never reported that to anyone for several years.  Also,

14 he testified unambiguously that he does not know who put

15 those items there, and he has no reason to believe it was

16 James Vafeades.  And I know the complaint tries to make a

17 connection between those items and James Vafeades but

18 discovery has showed that's simply not true.  And also,

19 you know, plaintiff testified that he's aware of other

20 pranks involving penises.  So, you know, there's also the

21 possibility that could have just been something completely

22 different.  Nobody knows who did it, I don't.  Plaintiff

23 testified he doesn't.  And there's simply just no evidence

24 to connect it to either of my clients.

25      Also, those claims are time barred, they

Pre Motion Conference

9

1    happened years ago and, you know, they can't be brought

2    back through a continuing violation theory because, you

3    know, they happened years before any other of the alleged

4    adverse action.  And there's no evidence of, like, an

5    ongoing discriminatory policy being implemented.

6          Moving on to the allegation that Sergeant

7    Pelligrino made some type of comment at a training session

8    in March of 2022.  That claim, you know, also can't be

9    attributed to either of my clients as a retaliation claim.

10   Initially, you know, Sergeant Pelligrino was -- had

11   nothing to do with the bagel store, I don't believe he was

12   involved in the decision of who to promote.  I'm pretty

13   confident that's the case.  James Vafeades was not in this

14   training session and neither was the plaintiff.  It

15   involved other officers.  You know, plaintiff's name was

16   not brought up in any way.  So I think it's just very

17   speculative to say that whatever comment that person made

18   at a training session, you know, somehow was retaliatory

19   against plaintiff when he wasn't there.

20         Also, when plaintiff brought it to the attention

21   of Ms. Weinstock, the HR director, she immediately

22   contacted James Vafeades, who was still the commissioner

23   at the time, and he properly addressed it.  He spoke to

24   Sergeant Pelligrino and said -- you know, I don't know

25   exactly what you said but be more careful in how you say

**Pre Motion Conference**

1  things, you don't want to make people nervous.  And he

2  even entered something in his disciplinary ledger.  So he

3  basically wrote him up, and all of those facts are

4  outlined in my 56.1 statement.

5        And another thing that's important to note is

6  that Ms. Weinstock never told Jim Vafeades who made the

7  complaint.  So, from his perspective, I don't see how he

8  would ever believe it had anything to do with the

9  plaintiff who wasn't at the training session and wasn't

10  named specifically in it.

11        Moving on to the allegation of the denial of an

12  overtime assignment at the 2022 Saint Patrick's Day

13  Parade.  As outlined in defendant's 56.1 statement, there

14  were legitimate reasons for not allowing plaintiff to work

15  that shift.  He had been out on sick leave when the order

16  was issued.  There's a department-wide policy that if

17  you're out on sick leave when an order is issued of this

18  nature, you're not going to be on it.  And although he did

19  return before the actual parade, I believe he testified

20  that he didn't reach out to anyone asking if he could be

21  added to the order, didn't inquire about that.  I think

22  it's also important to note that, you know, he testified

23  -- plaintiff testified himself that at his 50H that he's

24  one of the highest paid Sergeants in the department

25  because of the overtime he takes on.  So he's not claiming

**Pre Motion Conference**

11

1    that he was ever deprived of any other overtime

2    opportunities compared to other officers.  It's just a one

3    time where he was out on sick leave and a policy required

4    him to be excluded.

5            And moving on to the, you know, failure to

6    promote allegation.  Obviously, plaintiff cannot rely on

7    any temporal proximity because any of the alleged

8    protected activity that he made was in 2017.  Possibly a

9    little bit in 2019, but he, the promotional decision did

10   not take place until it was November -- October or

11   November of 2021.  So you're talking about several years

12   later.  So obviously there's no temporal proximity to rely

13   on, which means that the only way plaintiff can show

14   causation is to show, you know, actual evidence of

15   retaliation.  And he doesn't.  There's a lot of

16   speculation, a lot of hear say.  But at the end of the

17   day, we have a police department that had two candidates

18   on the civil service list who were eligible and they

19   exercised their discretion to use the one and 3 rule,

20   which is when you can pick anyone on the list, not

21   necessarily the person with the highest score.  And, as

22   outlined in defendant's 56.1 statement, there's compelling

23   objective documentation showing why Officer Daud was more

24   qualified.

25           Just wanted to quickly proceed to page numbers

Pre Motion Conference

12

1   -- so it would be paragraphs 87 through 105.  So, you

2   know, we're talking about Officer Daud had more positive

3   evaluations overall.  He had zero entries in his

4   disciplinary or training ledger.  Plaintiff had two

5   civilian complaints, Daud had zero.  His productivity

6   levels were higher, just, you know, across the board, he

7   ranked higher.  And James Vafeades did not make this

8   decision alone, he consulted his administrative team

9   consisting of upper level lieutenants in the department.

10  And they all agreed and those are individuals that he

11  testified he gets along with and never had any issues

12  with.  And I'm referring to Ken Schaffer, Chris Romance,

13  Sal Mazza, and Matt Vickory.  Those names are at paragraph

14  88 of the 56.1 statement.

15          So with the solid evidence of legitimate,

16  non-retaliatory reasons, there's no evidence to show that

17  defendants would have made a different promotional

18  decision, you know, even if -- whether or not plaintiff

19  had engaged in protected activity years prior.

20          And finally, the allegation regarding the

21  investigation that was conducted by human resources.

22  There's no evidence in the record that that investigation

23  was handled a certain way or, you know, resulted in a

24  certain way because of some type of animus.  Ms. Weinstock

25  was the one that conducted the investigation.  She doesn't

**Pre Motion Conference**

13

1  work in the police department, she had nothing to do with

2  the bagel store, she just conducted her investigation in

3  her capacity as director of HR.  And James Vafeades, he

4  was responding to her request for information, but he was

5  not a decision maker in that investigation.  And I just

6  wanted to address what you had brought up earlier.

7  THE COURT:  Count four or the 4th cause of

8  action, yes.

9  MS. WEISBORD:  The Civil Service Law 75(b)

10  claim.  Initially, it's time barred.  And any conduct that

11  predates February 21, 2022 should be time barred by the

12  one year statute that existed at the time.  Which would

13  leave only the overtime allegation as part of the statute

14  of limitations.  And while there was a change to the

15  statute in January of 2022, changing the statute of

16  limitations from 1 to 2 years, there's no language in that

17  statute indicating that it was intended to be retroactive,

18  and I'm going to cite the same case that former defendants

19  counsel cited at the premotion conference on the motion to

20  dismiss, which is Passano versus Reynolds.  2023 New York

21  slip 31741, 2023 New York Supreme Court case.

22  THE COURT:  But particularly where you're asking

23  me to interpret as newly enacted statue, based on its

24  language and its history and so forth, might that not be

25  the moment, if you were to prevail on everything else, and

Pre Motion Conference

14

 1    I'm not saying you are.  But if you were, the Court should

 2    probably decline to execute -- to exercise its

 3    jurisdiction and allow the state court to determine in the

 4    first instance how it should read it's own statutes?

 5              MS. WEISBORD:  I would agree that if all of the

 6    federal claims are disposed of, I see no reason why this

 7    court should retain jurisdiction of the claim and it

 8    should be dismissed.

 9              THE COURT:  All right, very good.  Thank you.

10              Anything else, counsel?

11              MS. WEISBORD:  Yes.  Just one more thing.

12              THE COURT:  Take your time.

13              MS. WEISBORD:  I just wanted to quickly mention

14    the facts, the response to my statement of facts.

15    Specifically the witness statements that were submitted by

16    Veronica Lynch and Charles DeGennario.  He is the former

17    commissioner who the village parted ways with and then

18    promoted Mr. Vafeades and he left, it was not voluntarily.

19    And then Veronica Lynch, who retired from the village, she

20    was a part-time employee who worked in the police

21    department, and she retired several years ago.  I just

22    want to point out that the Court really should, you know,

23    disregard most, if not all, of those statements.  For

24    instance, Veronica Lynch, her testimony severely

25    contradicts the contents of the witness statement.

**Pre Motion Conference**

1    Specifically -- well, first of all, her witness statement

2    indicates that she visited Wendy Weinstock in fall of 2019

3    to discuss plaintiff's complaint about not being promoted.

4    But that promotional decision happened two years later.

5    So I don't know if was a mistake in the statement, but at

6    her deposition she stuck with her 2019 date.  So it's

7    clear she doesn't have any recollection of what happened.

8    Also, there's part of her witness statement that says that

9    she was with another employee named Cindy Bauman, and

10   would have conversations about the bagel store.  And her

11   testimony contradicts that statement, and she did not

12   identify Cindy Bauman as somebody she discussed that with.

13          Also, her statement alleges that Mr. Vafeades,

14   the individually named defendant, made a comment in front

15   of her that, when he became commissioner, he was going to

16   demote Quinn and fire Beatty, plaintiff.  And I would just

17   like to point out that, at her deposition, she testified

18   that she heard another officer say that named Nick DeLuca,

19   and did not identify James Vafeades as somebody who ever

20   said anything about wanting to fire the plaintiff.

21          Regarding Charles DeGennario, at the end of his

22   witness statement he's opining on the fact that -- on

23   whether the promotional decision to promote Daud instead

24   of plaintiff in November 2021 was retaliation.  And he has

25   no business opining on that, and he admitted at his

Pre Motion Conference

1  deposition that he retired three years earlier.  And that

2  he has no idea what was in either personnel file, didn't

3  know about plaintiff's more recent civilian complaints,

4  and did not know about their work performance for the last

5  three years.  So he would not be in a position to make

6  that decision since he had not been there and was not part

7  of the decision making process.

8          And I think that's all I have for now, thank

9  you.

10         THE COURT:  Excellent.

11         Counsel, would you like to say anything in

12 response?

13         MR. SCHAEFER:  Yes, your Honor, hopefully

14 briefly.  I just want to begin by if we -- you know.

15 Referencing counsel's concluding remarks, which pretty

16 much were focused solely on the credibility of deposition

17 and witness statements.

18         THE COURT:  I think you and I can agree that

19 credibility is really not the question for the Court.

20         MR. SCHAEFER:  That's the problem with a lot of

21 this motion, frankly, your Honor.  It really concerns

22 itself with credibility issues which, frankly, as we all

23 know, are subject to a determination by the trier of the

24 facts, unless there's a reason for somehow concluding as a

25 matter of law that they should not get that determination.

**Pre Motion Conference**

17

 1    And I haven't seen that here.  Obviously, these are

 2    credibility issues.

 3              Just tracking counsel's argument, there's not

 4    really any question here that, at least in the circuits in

 5    this court, that the kind of behavior that was alleged

 6    here is a matter of public concern.  I realize that there

 7    is authority that says out there that the Court can reach

 8    this issue as a matter of law, and obviously this is

 9    really, probably, the primary focus of the motion.  When

10    you get right down to it, basically.  You know, there was

11    a lot of attention paid on the motion to the question of

12    fact as to who actually, quote; owned, unquote, the bagel

13    store.  And we would submit, as we did in our letter, that

14    really when you get to it, that's a red herring.  Because

15    the fact is the concern with retaliation is retaliation

16    for engaging in behavior, specifically speech.  If the

17    speech is uttered, if a statement is made, alleging

18    impropriety in the ownership of the bagel store, that's

19    where the focus is.  Not on whether the person who made

20    the statement is actually accurate.  Whether it turns out

21    he was correct or incorrect.

22              As your Honor pointed out, also, there's a

23    concern in any situation really where you have a straw man

24    setup as far as who has the primary interest.  I'll just

25    point out on that issue here, the defendant, James

**Pre Motion Conference**

18

1  Vafeades, even by his own testimony, had some involvement

2  that would certainly raise a question of fact as to who

3  the actual principals in this business were.  He was

4  present at the closing when they bought the store,

5  testified at his deposition that his wife, one of the

6  ostensible owners, in fact, had no independent source of

7  income for ten years prior to the purchase.  That really

8  the funds that she contributed to the purchase of the

9  store came from his village employment.  He testified to

10  the fact that he got into a bit of a tiff with one of the

11  other officers, Mike Meehan.  When Meehan suggested that

12  they hang a police flag in the store window.  Vafeades

13  didn't think that was a good idea.  Obviously, this is

14  inconsistent with any sort of characterization of him

15  having a hands-off role.

16          Then there's the problem for the defendants of

17  all of the competing testimony out there regarding

18  statements he made and what he was doing at the bagel

19  store.  On the one hand, he told Quinn that he was helping

20  Meehan out.  He said other things to plaintiff when

21  plaintiff walked in and saw him behind the counter in the

22  bagel store.  Mr. Vafeades can't remember whether he

23  actually rang up a sale, that was his deposition

24  testimony.  He also was uncertain in his mind as to

25  whether he accessed the video monitoring system in the

**Pre Motion Conference**

19

1   store from his police department office.  Obviously,

2   something that would have been done if he had an interest

3   in monitoring the operation of the business.

4          So really, when you get right down to it,

5   someone speaking out, as my client did, on whether this

6   was all a good idea, it would pass what I like to call the

7   local newspaper test.  And that essentially is if there

8   was an article in a local newspaper, pointing out this

9   concern about a suspected arrangement involving Mr.

10  Vafeades and the two other officers, would be -- that

11  would that be the kind of thing that would pique the

12  public's interest.  And if the article were to focus on

13  things, like here, Mr. Vafeades, as a superior officer,

14  was in a position to either reward or punish the other two

15  police officers based on what went on in the bagel store.

16  That certainly would be a, rise to a level of potential

17  corruption that would be a matter of public concern.  And

18  frankly, the idea that even if the wives did own the store

19  as principals, I think most people who have been involved

20  in a standard domestic relationship can appreciate the

21  fact that we all have a vested interest in placating the

22  concerns of our spouses, as well as our own.

23          So it T would be, frankly a futile opportunity

24  in that situation, even if his wife was the sole owner,

25  for him to take action in order to make sure that her

Pre Motion Conference

20

1    concerns were addressed.

2            As far as his speaking as a private citizen,

3    obviously Judge Bianco, as you mentioned, did address this

4    in Frisenda at length.  But there are a couple of

5    important distinctions here that were not in play in

6    Frisenda.  Specifically, Frisenda was a superior officer

7    reporting on potential misconduct within the department,

8    not off duty, by inferior officers.  So he clearly, as a

9    superior officer, in that situation, in a supervisory role

10   over inferior officers had an obligation to speak out and

11   take affirmative action with regard to on-the-job,

12   improper actions.  Now here, obviously it's a lot

13   different.  Here, you have a situation where you have a

14   Sergeant expressing a concern, not in the course of his

15   duties, about off duty behavior he saw.  The testimony

16   from Glenn Quinn, excuse me, the witness statement, and my

17   client's testimony confirms that the two of them had a

18   relationship where basically my client would walk in the

19   building, Quinn had an office, the two of them would chat.

20   And so this came up.  My client never made on official

21   report, he made the comments he made to Quinn, and that

22   initiated a sequence of events where he was questioned

23   ultimately by Gennario who, at the time, was the

24   commissioner.  So there was no official report.  And the

25   case law in this district pretty much holds that just

Pre Motion Conference

1   simply having a blanket, general observation that police

2   officers are to report misconduct, it doesn't -- it

3   doesn't transform in a sort of almost -- any comment that

4   someone may make regarding impropriety into something

5   that's done in the course of one's job duties.

6           THE COURT:  If I could interrupt you for a

7   second though.  Isn't that sort of at the core of it?  In

8   other words, if you're speaking out as a public citizen,

9   to your point, write for the newspaper, you write a blog,

10  you do something.  Here, you're telling me about a

11  conversation that then leads to the invocation of the

12  chain of command, right?  He's talking to one supervisor

13  then he winds up talking to the second supervisor.  That's

14  not something that a private citizen could, would, or

15  should do.  In other words, if a private citizen stopped

16  by and said to the desk sergeant, hey, you know, I think

17  this guy owns the bagel shop, the Sergeant would make a

18  note, maybe it would be subject to further investigation.

19  But that citizen doesn't get the opportunity or the

20  requirement of having to go up the chain of command and be

21  questioned about the facts, right?

22          MR. SCHAEFER:  But my client didn't initiate.

23  In other words, he didn't engineer that and he wasn't

24  responsible for that.  The fact that he may make a comment

25  to another officer in the context of a conversation,

Pre Motion Conference

22

1    again, if he's -- if he is then questioned about this by

2    Gennario, for example, which, as I understand it, was not

3    really in the course of a formal investigation of any

4    kind.  And, in fact, I don't think Vafeades was ever

5    disciplined, there was no investigation per se.  So it was

6    all in the context of concerns generally raised regarding

7    not only what my client saw, but also what Glenn Quinn had

8    seen and what Glenn Quinn characterized in an e-mail to

9    Gennario, that was submitted here, as the worst kept

10   secret in the history of department.

11          So this is a matter which clearly goes beyond

12   your typical chain of command report or disciplinary

13   infraction.  And, you know, you're on the treadmill

14   basically.

15          THE COURT:  So it's not Serpico.  You're old

16   enough to know what I'm talking about.

17          MR. SCHAEFER:  Exactly, your Honor.  It's not

18   that.  It's a situation where my client happened to be a

19   guy who walked his dogs at a particular park.  He saw this

20   fellow officer behind the counter in a bagel store, he

21   mentioned what he saw, and that started a chain of events

22   which, ultimately, as the evidence clearly demonstrates,

23   when we get to causation, there's more than ample evidence

24   that demonstrates that Mr. Vafeades, in particular, was

25   upset by this, once he found out about it.  You have

Pre Motion Conference

1   witness testimony that he made remarks to other employees

2   that he intended to fire Beatty once he became

3   commissioner.  I believe it was Ronnie Lynch who also

4   testified that, at some point, Mr. Vafeades became angry,

5   and started making statements that because Mr. Beatty had

6   said what he said, it affected, impacted his family.

7   Again, his reaction is to the speech, which is what the

8   concern is.

9          If I could just follow along.  You know, the

10  problem with, again, factual nature of a lot of this

11  argument is it requires you to buy in to lock, stock, and

12  barrel to Vafeades recollection of events --

13         THE COURT:  Hang on.  I'm going to stop you

14  right there because that's not really what I'm focused on.

15  What I'm focused on is this.

16         Isn't it true and, as counsel pointed out, we

17  talked about some of this at the motion to dismiss stage.

18  I permitted discovery to go forward because I thought you

19  had the right tools that, at least you should look into

20  that.  As part of that discovery, isn't it fair to say

21  that we now know that the department's manual required the

22  plaintiff to, quote; immediately report, unquote, any

23  violation of law, ordinance, rule, or order of the

24  department?

25         MR. SCHAEFER:  Again, the problem is, if you

**Pre Motion Conference**

24

1    take that at face value, the defendant's, on the one hand,

2    I mean their clearly talking out of both sides of their

3    mouth.  They're arguing that, in fact, even if everything

4    we say is true, there was no actual violation.  Okay?

5    They're saying that, you know, he didn't do anything

6    improper, he had no obligation to report.  So then you get

7    to the question of whether a articulated concern over

8    public corruption, all right?  That, that argument, your

9    Honor, is relevant only if we pigeon hole the speech as

10   limited to an allegation that Mr. Vafeades was violating

11   the protocol set forth in the manual, okay?  That's,

12   again, a bit of a red herring here, and I understand, and

13   I will concede that a lot of focus was in the pleadings

14   and in the initial motion to dismiss stage.  But now, as

15   you pointed out, we had the opportunity to have discovery,

16   and it's pretty clear on this record, if I may, that it

17   wasn't simply a concern as to whether he did or did not

18   fill out an off-duty form.  The concern went beyond that,

19   okay?  The concern went to how was this arrangement

20   impacting what was going on in the police department.

21   There's clearly evidence that a juror could find that my

22   client spoke on that issue and he was retaliated against.

23            THE COURT:  Right, but the flip side is when we

24   go back to the question I raised with the manual.  Your

25   client didn't just chat with his partner, and I know I'm

Pre Motion Conference

25

1    probably talking about a time in the police department

2    where people had partners, and I know there's single cars

3    and so forth now.  But he went to Inspector Quinn, right?

4    He went to the guy who was responsible for investigating

5    this sort of thing.

6           Doesn't that change it?  In other words, no

7    private citizen as access to Inspector Quinn.  Or even

8    knows that that's where you report this potential

9    violation of the regulations.  Doesn't that change it?

10          MR. SCHAEFER:  I'm not sure though, your Honor,

11   with all due respect, that there's anything in the record

12   that indicates that a routine, garden variety complaint of

13   impropriety, on the part of other officer would have went

14   to Quinn.  I'm not sure how it works out.

15          THE COURT:  Wait, wait, wait.

16          MR. SCHAEFER:  He's an inspector, I understand

17   that.

18          THE COURT:  That's what I mean.  He's not saying

19   to the meter maid.  He's not saying it to someone hanging

20   out at the police station.  It's kind of specific as to

21   where the concern lands.  That's what, I guess, has my

22   attention.

23          MR. SCHAEFER:  Your Honor, again, in this

24   context I'm not sure titles really mean that much.  The

25   fact is the evidence, on the other hand, shows that he had

Pre Motion Conference

26

1  a relationship with Quinn, to the point where he felt

2  comfortable speaking with him, which would support an

3  inference that, again, he was just speaking, for lack of a

4  better word, about what he -- lack of a better way

5  of putting it, about what he had observed while he was off

6  duty.  There was no intent on my client to initiate a

7  formal, you know, complaint against Mr. Vafeades.

8          But, again, to just follow up.  In addressing

9  clients comments.  You know, you clearly have as far as

10  the evidence of retaliation is concerned, there's a lot

11  here, and I don't know how much time --

12          THE COURT:  I have as much time as you need,

13  counsel.  I have the rest of the day for you, so go ahead.

14          MR. SCHAEFER:  You know, the fact is, just

15  taking the failure to promote claim, defendants spent a

16  lot of time on motion, trying to buttress the claim that

17  Mr. Vafeades, in fact, had a good faith, nondiscriminatory

18  basis for making the decision to promote Daud, as opposed

19  to my client.  But frankly, there's a lot in this record

20  that makes that claim suspect, to say the least.  And if

21  you look for specifically at our response to defendant's

22  56.1, if you look at our response to paragraph 87, I think

23  we may have mis-referenced it in our letter as paragraph

24  89, but it's paragraph 87.  We cite to Mr. Vafeades

25  testimony specifically, you know, the fact that he

Pre Motion Conference

27

1   conceded that two out of the three evaluations of

2   plaintiff relied on my client never signed, he may have

3   not had an opportunity to review them.  These unfavorable

4   evaluations confirmed that all three of Daud's evaluations

5   were signed by his direct supervisor less than a week

6   after the evaluation period.  There's evidence here that

7   would support a conclusion by the jury that typically,

8   what happened was somebody would have an evaluation

9   period, it would end in, let's say, January.  A supervisor

10  would write up a proposed evaluation, due course would be

11  shown to the employee, the employee would have a chance to

12  weigh in, acknowledge receipt, add any comments.  All this

13  typically took some time.  Here, all the evaluations that

14  supposedly put Daud in a glowing light, were signed within

15  days of the time they were completed.  On one occasion,

16  they were signed by the supervisor lieutenant Mazza, on a

17  date where the record showed that Mazza was actually not

18  present that day.  He was out sick.  So there's certainly

19  a credibility issue with that.

20          You know, the defendants cite the performance

21  aspect of both candidates.  Awards documentation,

22  supposedly considered by Mr. Vafeades.  Ms. Weinstock, in

23  her investigation, sent an e-mail to Mr. Vafeades when she

24  asked for this material complaining that it was actually

25  quite old, and when one looks at it, while they were

Pre Motion Conference

28

1   sergeants, plaintiff actually received a one combination

2   whereas Daud didn't receive any.  In they event, Vafeades

3   testified that, in fact, he didn't give the awards, quote;

4   a lot of weight, closed quote.  And as far as the civilian

5   complaints against my client, they were both found to be

6   unfounded.  So there's really, and again, and I don't want

7   to spend more time than --

8           THE COURT:  Take your time.

9           MR. SCHAEFER:  -- than I need to.

10          THE COURT:  And it's interesting, it really is.

11  There are some close questions here.

12          MR. SCHAEFER:  There's clearly a jury issue

13  here.  And I'm not sure we had an opportunity, both

14  counsel and I, to address it in the motion papers.  But

15  the other problem is with regard to the training ledger,

16  which Mr. Vafeades supposedly relied on instances of

17  infractions by my client a lot of that stuff is back

18  loaded at the end of his tenure when, obviously, there was

19  at least, a basis for finding that the retaliation had

20  already been initiated.  And, in fact, there's evidence

21  that this has continued to this day.

22          The other concern, obviously, would be with what

23  went on when my client went and filed his administrative

24  complaint, and this goes to the indifference that was

25  exhibited in the face of his complaints.  Specifically, if

Pre Motion Conference

1   you look to our response paragraph 114, there's a lot of

2   evidence that suggests that any investigation into his

3   complaint in November 2021, that is being retaliated

4   against, that the investigation was, in fact, pretextual.

5   There's no other way to put it.  If you look at Ms.

6   Weinstock's own deposition testimony, again, referenced in

7   paragraph 114 in our response, she stated that inquiring

8   into whether Vafeades intentionally decided not to promote

9   plaintiff out of retaliation, was something that would not

10  have been part of her quote; thought process, closed

11  quote.  She confirmed in her deposition that, in the

12  course of her investigation, she never actually spoke to

13  Glenn Quinn, the inspector, Charles Gennario, the

14  investigator -- I'm sorry, the commissioner, Ronnie Lynch,

15  who worked up on the second floor, adjacent to Mr.

16  Vafeades office.  Nick DeLuca, or Mike Meehan, the two

17  other officers who are alleged to have owned the bagel

18  with Mr. Vafeades.  In fact, she also testified that, on

19  one occasion, you know, you heard counsel mention that

20  Ronnie Lynch gave a less than credible response with

21  regard to a date that she went to speak to Wendy Weinstock

22  about my client.  Well, Ms. Weinstock conceded at her

23  deposition that, in fact, that interaction took place.  So

24  it's not as if there's an issue here regarding whether my

25  client is creating a meeting that didn't occur.

Pre Motion Conference

1  Ms. Weinstock conceded it took place and Ms. Weinstock

2  conceded that she decided that she didn't need to speak to

3  Ms. Lynch.  So she basically brushed her off.

4       She stated that her decision not to speak to

5  inspector Quinn to determine when Vafeades first learned

6  of Beatty's statements about Wantagh Bagels was because

7  Quinn's belief Vafeades hated him and was going to demote

8  him meant that quote; he would not be an honest witness.

9  In other words, discounting his -- the value of any

10  statement he may have made without taking the opportunity

11  to speak with him.

12       There was also the fact that earlier in 2018,

13  June of 2018, the village had received an anonymous

14  complaint concerning Wantagh Bagels, but that no

15  investigation ever took place.  All these -- and the

16  evidence of that complaint is in the record submitted as

17  defendants 00112-1114, that's the Bates stamp of their

18  exhibit.

19       Then, all this really goes to the question of

20  deliberate indifference in the face of my client's

21  complaints.  And that, of course, is sufficient to

22  establish, not only causation, but also, on the question

23  of Monell liability.  There's no question here that Mr.

24  Vafeades qualified as a policy maker and, frankly, Mayor

25  Murray as well.  It's clear that later in the same

Pre Motion Conference

31

1    timeframe, is when my client complained to Wendy

2    Weinstock.  He also e-mailed the mayor and asked that

3    something be done.  And frankly, there was no response to

4    that, other than the Weinstock investigation, which we've

5    shown was problematic, at best.

6              As far as --

7              THE COURT:  You know what, if I make may take a

8    moment.  There's one thing I need to grab, I will be right

9    back.

10             (A recess was taken at this time.)

11             THE COURT:  I do have a question for counsel,

12   before we proceed.  The anonymous complaint, that wasn't

13   something that really hit my screen.  What was the focus

14   of that?  Was it the ownership issue, or was it just a

15   general complaint.  They're too noisy there or something

16   else.

17             MR. SCHAEFER:  Your Honor, unfortunately, I

18   don't have it in front of me, but, from what I recall, and

19   obviously it's part of our filing.  I can tell you which

20   exhibit it is, if I can have a moment of.

21             THE COURT:  I was trying to pull it up.

22             MS. WEISBORD:  I found the document, so I have a

23   chance to know the answer.

24             MR. SCHAEFER:  I believe it's plaintiff's

25   Exhibit 6, if I may.  From what I recall, it was a pretty

Pre Motion Conference

32

1  broad based --

2         MS. WEISBORD:  Eight.

3         MR. SCHAEFER:  -- angry letter from a member of

4  public premised on the ownership arrangement and

5  expressing concerns exactly as to how that stood to create

6  or had created a problem in the village and in the police

7  department.

8         THE COURT:  Okay, thank you.  Please continue.

9         MR. SCHAEFER:  If I may, your Honor, just one

10  second, please.  I just want to point out, it seemed clear

11  to us on the motion papers, again, that the thrust, even

12  of defendant's argument, was essentially conceding this

13  was not something that was done by plaintiff in the

14  context of his police duties.  And my basis for saying

15  that is, if you look at their statement of uncontested

16  facts, specifically between paragraphs 49 to 64, those all

17  appear under the heading; plaintiff clandestinely monitors

18  Wantagh Bagels unbeknownst to James Vafeades.  And among

19  the other uncontested facts that defendants assert is that

20  number 60, Beatty testified he was not instructed to take

21  any photographs or otherwise perform any type of

22  investigation relating to Wantagh Bagel.  Now, being

23  charitable, but, frankly, candid with regard to why

24  defendants may have interposed this type of argument; I

25  think it's safe to say that one of the implications here

Pre Motion Conference

33

1   is that, for whatever reason, or among the reasons

2   plaintiff may have done what he did, was that he may have

3   been the one who had a personal animus or an axe to grind

4   for whatever reason against Mr. Vafeades.  Although

5   there's no evidence in this record as to exactly why that

6   would have been the case, no indication of any prior

7   disputes between the two men or anything like that.  But

8   it's clear that if one takes those assertions at face

9   value, the one thing they don't seem to implicate is any

10  action undertaken in the course of official duties.

11  Frankly, we think that flies in the face of any contrary

12  assertion that because there happens to be a manual

13  provision out there that obligates officers to report any

14  instance of wrongdoing that somehow this became

15  transformed into an official responsibility.  Defendants

16  own 56.1 seems to point in a different direction.

17          Again, your Honor, I'm not going to go beyond

18  what's in our four page letter.  I think we covered pretty

19  much our position with regard to all these issues.  The

20  only real remaining issues of law on the Section 75(b)

21  claim, we believe, the argument is valid that the

22  chronology of the amendment of the statutes was such that,

23  at the time our claims were interposed in 2023, there was

24  a two-year statute of limitations, which governed the

25  Section 75(b) Civil Service Law Claim.

Pre Motion Conference

34

1       And as far as the remaining objection to that

2   claim, defendants don't cite any law that supports their

3   contention that the -- that the, to the extent that the

4   complaint concerned a failure to comply with the

5   obligation to obtain authorization to engage in off-duty

6   employment, that that would not have qualified as a

7   complaint covered under section 75(b).

8       The only remaining argument, as I recall, and

9   this, again, came up in the motion to dismiss stage, is

10  the extent to which there's a New York State

11  constitutional claim.  Obviously their case law is clear

12  that if there is a valid federal counterpart, that the

13  state claim will not be entertained.  But, as we pointed

14  out on the argument to dismiss, there is still this

15  unresolved issue with regard to vicarious liability.

16  Vicarious liability is available under the state

17  constitutional tort claim, but is not available under 1983

18  or, at least, our latest research indicates that hasn't

19  changed.  I don't believe there's been any updated cases

20  on that.

21      And frankly, unless the Court has any other

22  questions...

23      THE COURT:  Actually, counsel, that was

24  extremely and helpful, so thank you.

25      Do you have any brief response?

Pre Motion Conference

35

1     MS. WEISBORD:  Yes, your Honor.

2     THE COURT:  You may.

3     MS. WEISBORD:  Initially, the state

4  constitutional claim against the individual defendant

5  should be dismissed because, you know, plaintiff has

6  pursued a federal remedy under 1983.  He's a former

7  commissioner so there's no official capacity claim,

8  there's no vicarious liability theory that can keep that

9  claim in against him.

10     I also forgot to mention earlier, the issue of

11  Monell liability.  The board, the village board is the

12  final decision maker on all personnel decisions.  As

13  commissioner, James Vafeades was certainly a high ranking

14  official within the police department, but that does not

15  make him a final policy maker for Monell purposes.  You

16  know, the written policies are determined by the board and

17  they pass resolutions, approving any recommended

18  appointments.

19     And then I just wanted to briefly address some

20  of the things that Mr. Schaeffer said earlier.

21     You know, regarding the two witness statements

22  that I had mentioned, it's not really so much of a

23  credibility issue, it's an issue of, you know -- there's

24  two statements which, might I add, do not have any

25  language indicating that they were signed under a penalty

Pre Motion Conference

36

1    of perjury.  And then you have these two same individuals

2    who were deposed and testified to things that just

3    completely contradict the witness statement.  So I'm

4    asking that, you know, the contradictory portions of the

5    statement be disregarded because there's a long line of

6    cases that says that, you know, when you have self-serving

7    statements contradicting sworn testimony, you can't have

8    both.

9            On the issue of ownership of the bagel store, I

10   just want to reiterate that we submitted documentation

11   proving who owns it.  You know, the fact that James

12   Vafeades' wife, you know, had not been working for several

13   years before opening the bagel store, doesn't mean that

14   she wasn't the owner.  She had a history working in the

15   restaurant business before, she was not working for a

16   period of time.  So she was experienced.  And as for, you

17   know, plaintiff's indication that Jim Vafeades had to

18   placate, I believe was the word, her, she, you know, these

19   three women would more than capable of running their own

20   business.  The police officers, they helped out to a

21   certain extent as husbands, but they were not owners.  So

22   whatever perceived corruption that was alleged in the

23   complaint simply ended up not being a thing, it's not

24   true.

25           Regarding speaking as an employee and not as a

Pre Motion Conference

1    private citizen, as your Honor pointed out, his

2    conversation led to the invocation through the chain of

3    command.  He walked into the bagel store, you know, saw

4    something, took pictures, gathered what he wanted to, and

5    then he went to the second highest person in command in

6    the department, and he, you know, made this complaint as

7    he was required to, under the department policies.  And

8    then he also spoke to the commissioner.  That's not

9    chatting at the water cooler, that's reporting an alleged

10   violation of the policy based on your job obligation to do

11   so.

12          And to the extent plaintiff is claiming that he

13   didn't really make a complaint and he was just chatting

14   with the coworker, I would argue that's not protected

15   activity, that's just chatting with a coworker, you know,

16   gossip.

17          Regarding Ms. Weinstock investigation.  Let's

18   assume for the purposes of what I'm about to say that it

19   could have been more thorough, that doesn't show an intent

20   to retaliate against the plaintiff.  Which is what's

21   required here.  This is not a negligence case, this is

22   intentional tort.  There is zero evidence in the record

23   that Ms. Weinstock or anyone within her department did

24   anything with some type of animus towards the plaintiff,

25   she was just doing her job.

Pre Motion Conference

1        And as for, I think plaintiff mentioned some

2   discrepancies in evaluations, the person who evaluated

3   Arthur Daud and signed it is not James Vafeades or anyone

4   else who was involved in the promotional decision.  I

5   believe.  So I don't -- that doesn't further any claim of

6   retaliation.  And even if one supervisor signs paperwork

7   more quickly than the other, that doesn't change the fact

8   that officer Daud's evaluations had more positive comments

9   and plaintiff's had some constructive criticism, written

10  comments, that were a little concerning.  And prompted Mr.

11  Vafeades to look into other objective data, which he did.

12  This decision was based on various objective, data which

13  is all outlined in the statements of facts.

14        And then, just really quickly, I just wanted to

15  mention the training -- well, I wanted to mention the

16  anonymous complaint.  It was anonymous.  I don't know who

17  wrote it, Ms. Weinstock doesn't know who wrote it, nobody

18  knows.  So, you know, even if the village received an

19  anonymous complaint about leadership in the police

20  department, I don't see how that furthers plaintiff's

21  retaliation claim.  When he's not -- he specifically

22  denied sending that letter.  So he's not claiming it is

23  his own protected activity.

24        As for anything Quinn might have done, he's not

25  a plaintiff in this lawsuit.  So to the extent he did

**Pre Motion Conference**

39

1    anything that you could, you know, construe as protected

2    activity, which I'm not saying is true, that doesn't

3    bolster plaintiff's retaliation claim either.

4            And finally, I believe plaintiff mentioned some

5    entries in the training ledger, and has recently made a

6    claim that some of those entries were meant to retaliate

7    against plaintiff.  And I just want to point out that is a

8    claim that does not exist in the notice of claim or in the

9    pleadings.  It's something that I don't know when it came

10   up.  But it hasn't been pled and it can't be pled for the

11   first time in opposition to summary judgement motion.  Not

12   to mention the fact that those entries were filled out by

13   supervising officers who counseled him on issues in the

14   workplace.  It was not Jim Vafeades.  He was the

15   commissioner, he is not personally filling out those

16   entries.  These were other officers that plaintiff

17   testified he got along with and didn't have any issues

18   with.  So I would argue that should not be allowed to come

19   into the case at this late juncture.

20           THE COURT:  Thank you, all right.

21           MR. SCHAEFFER:  Your Honor, very briefly.  Four

22   points, if I may.

23           THE COURT:  Briefly.

24           MR. SCHAEFER:  Thank you, your Honor.  Briefly.

25   Counsel expressed a concern about certain witness

Pre Motion Conference

40

1    statements being unsworn.  The reason we submitted a

2    verifying affidavit by Quinn is because he was the one

3    witness who gave a statement who wasn't deposed.  The

4    others; Gennario and Lynch, were shown their witness

5    statements by counsel for defendants at their depositions

6    and verified under oath those were their statements.  So I

7    think that alleviates any concern as to the admissibility

8    of the statements.

9           Second, counsel made a point on the capability

10   of the wives on running the business, that Ms. Vafeades

11   had been in the restaurant business briefly and the other

12   wives were more than capable of running businesses.  I

13   have no recollection in the record that any of this came

14   out in the record during deposition testimony or

15   otherwise.

16          As far as whether Ms. Weinstock intentionally

17   retaliated, counsel's argument fails to account for the

18   fact that, upon a finding of pretext by the jury, that

19   finding alone could support a finding of retaliation.

20          But most importantly, I want to get to the

21   capital P concern, which is this issue regarding whether

22   my client spoke as a private citizen as opposed to as an

23   employee.  And I think it's important, perhaps I didn't

24   really draw the context out clearly enough in my initial

25   remarks.  To distinguish this scenario from what typically

Pre Motion Conference

1    happens in cases of police discipline.  If we think about

2    departments like the City of New York, or Nassau county,

3    there are charges and specifications proffered after an

4    investigation.  There's an IAU investigation that proceeds

5    all this where, traditionally the target of the

6    investigation is brought in last and questioned.  Charges

7    and specifications are proffered, there's a departmental

8    hearing.  Things happen that, you know, most people would

9    find to be somewhat routine or bureaucratically less than

10   enthralling, I guess, would be one way to put in.

11           In contrast here, you have a situation that

12   occurred in a small village department, which, I think, if

13   you look at the totality of circumstances, was a cauldron

14   of conflicts views on exactly what was happening here.

15   And what it meant.  All this has got to be viewed against

16   the background as defendant's emphasized on their

17   questioning of commissioner Gennario, when it became

18   apparent at some point that commissioner Gennario was not

19   going to be reappointed, there was evidence in the record,

20   I believe Mr. Vafeades testified to the fact, that he was

21   told by the village administrator, Kathleen Murray, in, I

22   want to say the spring of 2018, that Gennario was not

23   going to be reappointed and that he was the likely

24   candidate.  The obvious implication being from the

25   defendant's perspective that, to some extent, Gennario may

Pre Motion Conference

1  have had an axe to grind against Mr. Vafeades.  Or

2  alternatively, may have been unduly sympathetic to

3  plaintiff's claims.

4         There's also substantial evidence in the record

5  that Mr. Vafeades had a pronounced dislike of inspector

6  Quinn.  He testified during his deposition at length to

7  statements by Quinn and behavior by Quinn posting pictures

8  of the bagel store, and the police department, making

9  negative comments about Mr. Vafeades' wife, who was a

10 cancer survivor.

11        My point is, all this, given the totality of the

12 circumstances, at the very least, compels a finding that

13 this was not something to the extent my client was

14 involved which took place in the ordinary course of

15 business about complaining about police misconduct.  This

16 was much more.  This was, for lack of a better word, a

17 village scandal.  And village scandals, I would submit,

18 are the epitome of public concerns.  They go to the heart

19 of the political process, the give and take between

20 competing views; who should be in authority, once they're

21 an authority, what they should be doing about these

22 things.  My client weighed in on this matter of public

23 concern.  It's true he may have weighed in at the

24 beginning, at the inception, which, obviously, given a

25 more normal situation, would support a finding of a

Pre Motion Conference

43

1    routine complaint.  Given how, obviously, you have to have

2    something that starts off the process.  But, again, if we

3    look at the totality of the circumstances, it just is not

4    the kind of situation where we can pigeon hole what my

5    client said into a scenario where he was simply doing part

6    of his job.  This was much more than that.  This involved

7    a conflict between higher ups regarding how the village

8    should be run.  And to the extent that Mr. Vafeades put

9    himself in a bad position by getting involved with this

10   deal with the bagel store, his actions became fair game

11   for public comment, and that is what my client engaged in.

12   No more, no less.  Thank you, Judge.

13            THE COURT:  All right.  Thank you.

14            So, again, before me is a motion for summary

15   judgment.  And, again, although it came to me in the form

16   of a pre motion conference, counsel did a very thorough

17   job; both in terms of paperwork, which is very well done,

18   and the last hour and some time in which we've discussed

19   it.

20            As such, I do think that I'm in a position to

21   resolve it and, because of the strong incentives

22   underlying Rule 1 of the Federal Rules of Civil Procedure,

23   which require a speedy and just expeditious resolution of

24   the matters, in an effort to save time and money for the

25   parties, I'm going to make a ruling now.

Pre Motion Conference

44

1          So, I'll start with the factual background and

2     I'll get to the standard.

3          The plaintiff, as employed, is a Sergeant with

4     the Incorporated Village of Rockville Centre Police

5     Department.  Defendant, Vafeades, was the police

6     commissioner from April 2018 to June 2023.  Prior to that,

7     Mr. Vafeades was a police officer and lieutenant with the

8     department.  Now, I have a each one of these statements

9     tied to various plaintiff's responses to the 56.1

10    statement, but I'm not going to put those on the record

11    because you all know them.  If you have a question about

12    something, you can ask me.

13         Defendant, Vafeades, testified that his wife,

14    along with the wives of Nick DeLuca, and Michael Meehan,

15    purchased Wantagh Bagels in September 2016.  However, the

16    plaintiff argues that the wives were merely straw men, and

17    the real purchasers were the defendants; Vafeades and the

18    other officers; DeLuca and Meehan.

19         In support of the argument, plaintiff submits,

20    among other things, a witness statement from Inspector

21    Glenn Quinn with e-mails attached thereto, in which he

22    asserts that defendants Vafeades ownership of the Wantagh

23    Bagel Store with his direct subordinates since July of

24    last year, of course that's a historical letter, may be

25    the worst kept secret in the department's history.  You

**Pre Motion Conference**

45

1   can see plaintiff's Exhibit 1 for more on than.  Further,

2   Veronica Lynch, a clerical worker in the police department

3   testified that Michael Meehan told her that the three

4   couples purchased the store.  That's in plaintiff's

5   Exhibit 4.

6         The defendant Vafeades' involvement is very much

7   -- the extent of his involvement in very much in dispute.

8   Plaintiff testified he saw Vafeades car outside Wantagh

9   Bagels, that he saw defendant, Vafeades, behind the

10  counter in Wantagh Bagels, and he saw the commissioner

11  vehicle at Wantagh Bagels.  And that's in his deposition

12  at Exhibit D.

13        Plaintiff's discussed defendant, Vafeades,

14  apparent involvement in Wantagh Bagels with Inspector

15  Quinn in June of 2017.  Following that report, Chuck

16  Gennario, who was the police commissioner before Vafeades,

17  approached plaintiff to discuss his concerns about the

18  defendant, Vafeades, and his involvement with Wantagh

19  Bagels.

20        In 2018, the plaintiff took the lieutenant's

21  exam, and the top three candidates were; in order, Matthew

22  Vickory, and Arthur Daud.  Plaintiff's response at

23  defendants 56182 to 83.  Vickory, who was first on the

24  list was promoted in June 2021.  Arthur Daud, the third on

25  the list -- I apologize, I may have said that wrong

**Pre Motion Conference**

46

1　before.  It was Vickory, plaintiff, and then Daud.  Arthur

2　Daud was third on the list and was promoted ahead of the

3　plaintiff in November of 2021.

4　　　　It's undisputed that the department had the

5　discretion to select either plaintiff or Daud for the

6　vacancy because they were both the top three candidates.

7　The fact that they had the discretion, of course, doesn't

8　end the inquiry.

9　　　　Prior to Daud's promotion, plaintiff discussed

10　with Wendy Weinstock, the HR director, the rumors that he

11　heard regarding him being passed up for the promotion.

12　Plaintiff also told Weinstock that he found photos of rats

13　in the locker room with his face on them, and he received

14　an anonymous package of a cardboard penis in 2017.  Though

15　he does not no who created the photos or sent the package.

16　　　　Defendant, Vafeades, testified that he selected

17　Daud over plaintiff because Daud had no civilian

18　complaints and his evaluations were all positive, no

19　constructive criticism.  In addition, defendant, Vafeades,

20　testifies that the plaintiff's productivity levels were 28

21　to 30 percent less than other sergeants, while Daud was

22　very productive.

23　　　　According to plaintiff, however, those reasons

24　were pretextual, and he was passed up for the promotion in

25　retaliation for his reporting of the defendant, Vafeades.

Pre Motion Conference

47

1    In support of this, the plaintiff points to Veronica

2    Lynch's deposition in which she testified that defendant

3    Vafeades told her that Plaintiff's was going to affect

4    defendant Mr. Vafeades business and his family.  In

5    addition, former police commissioner, chuck Gennario,

6    testified that the defendant, Vafeades, blamed plaintiff

7    for the information getting out about his involvement with

8    Wantagh Bagels.  Gennario also testified that defendant,

9    Vafeades, told him, I'm going to fire him, plaintiff.

10           Shortly after plaintiff met with Weinstock in

11   November 2021, Weinstock met with the defendant, Vafeades,

12   and he testified that that was the first time he learned

13   that the plaintiff took pictures of him and his car at

14   Wantagh Bagels.  Plaintiff also testified that he was

15   excluded from working overtime on the Saint Patrick's Day

16   parade, but he also affirmed that, quote; you can't be

17   scheduled for overtime if you have no return to work date

18   because of some sort of injury, unquote.  That's in the

19   Defendant's Exhibit E.  Plaintiff was out hurt when the

20   assignment was made.

21           Plaintiff brought claims for,

22           One; violation of his First Amendment rights

23   against the defendant, Vafeades.

24           Two; violation of his First Amendment rights

25   against the defendant, village, under Monell.

Pre Motion Conference

1    Three; violation of his First Amendment right

2    under the New York Constitution.

3    And four; retaliation for complaining of

4    improper government action under the New York State Human

5    Rights Law.  And defendant now moves for summary judgment

6    on all claims.

7    Now, let's start with the standard.  Summary

8    judgment is appropriate if there's no genuine dispute as

9    to any material fact, and the moving party is entitled to

10   summary judgment as a matter of law.  That's a quote from

11   a case called Bartels versus Incorporated Village of Lloyd

12   Harbor.  97 F.3d 198 at 211.  Which was affirmed by the

13   Second Circuit in 2016.  Of course, that could be a quote

14   from many cases because we all well know the summary

15   judgment standard.  One part of it I want to focus on

16   though is this quote.  A fact is material if it might

17   affect the outcome of the suit, under governing law, and

18   the issue of fact is genuine if the evidence is such that

19   a reasonable jury could return a verdict for the nonmoving

20   party.  And that's the same case at 211 to 212.

21   So , what's material here?  That's an

22   interesting question because there are many disputed

23   facts, but some every them aren't material in this

24   courtroom.  So let's talk about the first cause of action;

25   violation of free speech against defendant, Vafeades,

**Pre Motion Conference**

49

1    under Section 1983.

2            The legal standard there to establish the First

3    Amendment retaliation by a government actor, the

4    plaintiff, must demonstrate that,

5            One; his or her speech or conduct was protected

6    by the First Amendment.

7            Two; the defendant took an adverse action

8    against him or her.

9            And three; there was a causal connection between

10   this adverse action and the protected speech.

11           And that was mainly a quote from Agosto versus

12   New York City Department of Education 982 F.3d 86 at 94

13   which is a Second Circuit case from 2020.

14           In the public employment context, quote; to

15   determine whether or not a plaintiff's speech is

16   protected, a court must begin by asking whether,

17           One; the employees spoke as a citizen.

18           And two; on a matter public concern.

19           And that's a quote from Susa versus Roque, 578

20   F.3d 164 at 170, which is a Second Circuit from 2009.

21           If the Court determines that the plaintiff

22   either, did not speak as a citizen or did not speak as a

23   matter of public concern, the employee has no First

24   Amendment cause of action based on his or her employers

25   reaction to the speech.  That's the same case.

**Pre Motion Conference**

1    Whether speech on a matter of public concern is

2    a question of law, and is to be answered by the Court,

3    after examining the content, form, and context of a given

4    statement, as revealed by the record as a whole.  That's

5    Montero V. City of Yonkers, New York, 890 F.3d 386 at 389,

6    which is the Second Circuit 2018.

7    Further, whether an employee spoke solely as an

8    employee and not a citizen is largely a question of law

9    for the Court.  That's Jackler versus Bryne.  658 F.3d

10   225, 237 and that's the Second Circuit from 2011.

11   So, let's start with the matter of public

12   concern.  This is surprisingly a closer question than I

13   thought, given some of the precedent.  But plaintiff's

14   cites to Jackler versus Byrne for the proposition that

15   exposure of official misconduct, especially within the

16   police department, is generally of great consequence to

17   the public.  658 F.3d 225 at 236, that's the Second

18   Circuit at 2011.  And this court could not agree more.  It

19   is a significant act for a police officer to come forward

20   and accuse a superior of concerning activity, and it is an

21   important matter for public concern.

22   The plaintiff points out that the potential for

23   corrupt self-dealing, in which Vafeades might be motivated

24   to exert pressure on his subordinates at work, and not to

25   address his own concerns, but to placate his wife in the

Pre Motion Conference

1   face of her complaints to him about obstensible partners,

2   and so forth.

3         Now, one could distinguish Jackler from this

4   case but, at the end of the day, I'm not persuaded.  It is

5   undisputed here, and this will come up in a moment, that

6   the department has a policy that says, any member of the

7   department becoming aware of any violation of law,

8   ordinance, rule, or order of department by any member

9   shall immediately report such conduct to their immediate

10  superior.

11        Now, the police manual then goes on to say, to

12  talk about, that an officer seeking off-duty employment

13  has to fill out certain forms, and then it pontificates

14  that a public employee may not transform a personal

15  grievance into a matter of public concern by invoking a

16  supposed popular interest -- I apologize, that is not the

17  manual.  That is from a case.  But in the way public

18  institutions are run.

19        But the question is this:  Is this really a

20  personal grievance transformed?  I don't think so.  I

21  think the undisputed record is clear here.  This certainly

22  does relate to matters of public concern, so that is not a

23  concern at all.

24        Recognizing that the Court has largely the

25  responsibility of making this determination, it is still

Pre Motion Conference

52

1   interesting to note that there are factual materials here

2   that support the notion this is a public concern, and I

3   refer, of course, to the anonymous letter, the anonymous

4   complaint, received by the department.  While I'm

5   referring to this, I have to, in the same breath,

6   acknowledge, I have no idea who wrote this, how it came

7   about.  But presumably, it's a member of the public, who

8   quite articulately, refers to the circumstances with

9   Wantagh bagels and raises the issues of public concern and

10  possible public corruption that could arise from such a

11  relationship.  So I just cite that, not that it's binding

12  on the Court in any way, but I think it's very interesting

13  on these particular facts.

14          So I do find as a matter of public concern.

15          However, where we run into difficulties is the

16  question of whether the plaintiff was speaking as a

17  citizen.  Assuming I'm correct and he was speaking on a

18  matter of public concern, the plaintiff was clearly

19  speaking pursuant to his duties as an employee, and not as

20  a citizen.  I'm going to quote some law here.  Since

21  Garcetti, some lower courts have developed more guidelines

22  for determining whether speech is made pursuant to a

23  public employee's official duties, although none of the

24  following factors are dispositive, they may be considered

25  by the Court.

Pre Motion Conference

1    The plaintiff's job description, the persons to

2    whom the speech was directed, and whether the speech

3    resulted from special knowledge came through the

4    plaintiff's employment.  And that's Frisenda versus

5    Incorporated Village of Malverne, 775 F.2d 486 at 508 an

6    EDNY case from 2011.

7    When applying those non-dispositive factors

8    here, although the plaintiffs aptly points out that he

9    observed the defendant, Vafeades, at Wantagh Bagels while

10   he was off duty, the departments manual required plaintiff

11   to quote; immediately report any violation of law,

12   ordinance, rule, or order of the department.  And the

13   plaintiff reported Vafeades conduct up the chain of

14   command to Inspector Quinn.

15   Going back to the Frisenda case, then District

16   Judge, now Circuit Judge Bianco, found that quote;

17   plaintiff was a lieutenant and was thus reporting to the

18   next person in his direct chain of command, a matter he

19   observed during his employment and that related directly

20   to the performance of lower ranking police officers.

21   There is absolutely no question that this communication

22   was prompted by his concerns about his ability and the

23   ability of other officers to properly execute their duties

24   as police officers.  Thus, this type of communication

25   falls squarely within the scope of the speech, as a public

Pre Motion Conference

54

1    employee under Garcetti; and that's 775 F. Supp at 508.

2            I cannot find a meaningful distinction between

3    this case and that one; that the relationship was

4    different, that the plaintiff was higher or lower on the

5    chain of command I find irrelevant.  The bottom line was

6    he was a police officer reporting a violation of police

7    regulation or a potential violation of police regulation

8    to the appropriate members of his chain of command for

9    further investigation.  It is interesting to me that

10   further investigation did occur.  In other words, this

11   police officer was then called in to be interviewed by a

12   higher ranking official for further investigation.  Once

13   again, the anonymous complaint helps make the point.

14   Again, I'm not relying on this, other than to say it's an

15   interesting fact.  But when someone, some anonymous

16   citizen reported the same things, nothing happened.

17   Nothing happened.  In other words, when this plaintiff, a

18   sworn law enforcement officer, reported the conduct, some

19   level of investigation followed.  And therefore, he was

20   not acting as a private citizen, he was acting as a police

21   officer.

22           That resolves several of the claims here.

23           It resolves the first cause of action because,

24   it is critical that he is speaking as private citizen for

25   the violation of free speech against by defendant,

Pre Motion Conference

55

1  Vafeades.  It also resolves the second cause of action

2  because it's, again, the violation of free speech.  The

3  same elements apply.  And here, I'll cite some more law to

4  you.

5          The dismissal of plaintiff' underlying claim for

6  the first amendment retaliation requires dismissal of

7  plaintiff's municipal liability claims as defendants can

8  not be liable where there is no underlying violations.

9  And that's Fotopolous, F-O-T-O-P-O-L-O-U-S, versus Board

10 of Fire Commissioners of Hicksville.  11 F.3d 348 at 373.

11 That's the Eastern District of New York, by our Chief

12 Judge, Judge Brody.

13         The third cause of action, which is a violation

14 of free speech under the New York State Constitution,

15 similarly fails because of the public private speech

16 distinction.  Where the, quote; free speech claims under

17 article one section eight of the New York State

18 Constitution are subject to the same analysis as free

19 speech claims under the first amendment.  Accordingly,

20 plaintiff cannot bring a separate cause of action under

21 the state constitution, and this claim must be dismissed.

22 Buchanan versus New York, City of New York, 557 F.3d 346

23 at 365.  From the nonbinding, but always interesting,

24 Southern District of New York, 2021.

25         Which leaves us with the fourth cause of action;

**Pre Motion Conference**

1   retaliation of complaining of improper government action.

2   This claim does not turn on the same questions of first

3   amendment.  And public versus private roles.  Rather, this

4   is a claim that the disputes of fact may well be material

5   toward, there may well be a triable case here.  But it is

6   not a case that's appropriately tried in this court.  And

7   the reason I say that, in part, is that both counsel have

8   argued various subtleties of the state statute which have

9   yet to be resolved by the state courts.  Which brings this

10  court to the question of where does that claim get

11  resolved?  And I think the answer is not here, but rather,

12  this is a viable claim for the state court to consider.

13  I'm going to give you some law here.

14          Quote; plaintiff also asserts a claim under New

15  York Civil Service Law section 75(b).  Having determined

16  that a federal Section 1983 claim does not survive summary

17  judgment, the Court concludes in its discretion that

18  retaining jurisdiction over state law cause of action is

19  unwanted.  And that's Agyeman, A-G-Y-E-M-A-N versus

20  Roosevelt Union Free School District.  254 F.3d 524, 539,

21  which is an Eastern District of New York case from 2017.

22  Again, written by Judge Bianco who now sits on the

23  circuit.

24          In the same way, I find in this case

25  particularly, because of the complications of state law

Pre Motion Conference

57

1    that have been highlighted by counsel, this court should

2    decline to exercise supplemental jurisdiction over

3    plaintiff's state law claim because they dismissed all

4    claims of which it had original jurisdiction.

5           So that is the ruling of the Court.  I intend to

6    enter summary judgment in favor of the defendants.  But,

7    as to the fourth claim, I will decline to exercise

8    supplemental jurisdiction, which leaves the plaintiff

9    free, I believe, to file that in an appropriate state

10   venue.

11          I'm not going to issue a written opinion, we

12   have a court reporter who is taking it all down.  You're

13   free to get that if there is something you wish to appeal,

14   or something that concerns you, or something that might

15   help resolve the case in any other way.  And when I say

16   that, I want to point out to everybody that it's not over.

17   There's still a viable claim.  Under the state law, you

18   may have various views, I don't know the state law well

19   enough to say where that goes.  But the matters can always

20   be resolved.  And I will suggest to you that maybe a

21   discussion might be less expensive and less angst filled

22   than continued litigation.  And I invite you to continue

23   to talk each other here, if you could like today.  You can

24   use my courtroom, you can use my witness rooms as my last

25   hope that, maybe, there's a resolution that can be had

Pre Motion Conference

58

1    without more difficult, and painful, and expensive

2    litigation.  So that is the decision of the Court.

3           Is there anything else I can clarify, or

4    discuss, or anything else I can do for either side?

5           MR. SCHAEFER:  No, your Honor.

6           MS. WEISBORD:  No, your Honor.  Thank you.

7           THE COURT:  I think it's important to note and

8    the client should know, while everybody is probably

9    unhappy with my decision to some degree, my goal is to

10   make everyone equally unhappy.  Your attorneys did a

11   really good job and they saved you a lot of aggravation

12   going forward because we got this resolved quickly and

13   efficiently.  So thank you to counsel who did a great job,

14   appreciate that.

15          (Proceeding concluded.)

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X
JOHN BEATTY,

                Plaintiff,

        - against -

JAMES VAFEADES, Individually and in his
capacity as Police commissioner of the Incorporated
Village of Rockville Centre, and INCORPORATED
VILLAGE OF ROCKVILLE
CENTRE,

                Defendants.
--------------------------------------------------------------X

**JUDGMENT**
CV 23-1373 (GRB) (ARL)

A Minute Order of Honorable Gary R. Brown, United States District Judge, having been filed on August 7, 2025, granting summary judgment in favor of defendants on plaintiff's first three claims, declining to exercise jurisdiction on plaintiff's fourth claim, deeming the case closed, and directing the Clerk of the Court to enter judgment, it is

**ORDERED AND ADJUDGED** that plaintiff John Beatty take nothing of defendants James Vafeaedes and the Incorporated Village of Rockville Centre; that summary judgment is granted in favor of defendants on plaintiff's first three claims; that the Court declines to exercise jurisdiction on plaintiff's fourth claim; and that this case is closed.

Dated: August 15, 2025
       Central Islip, New York

                            BRENNA B. MAHONEY
                            CLERK OF COURT

                BY:   /s/ JAMES J. TORITTO
                            DEPUTY CLERK

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
-------------------------------------------------------------------------X
JOHN BEATTY,

                    Plaintiffs-Appellant,

           -against-                          Docket No. 25-2153

JAMES VAFEADES, Individually, and in his capacity as
Police Commissioner of the Incorporated Village of
Rockville Centre, and THE INCORPORATED VILLAGE
OF ROCKVILLE CENTRE,

                    Defendants-Appellees.
-------------------------------------------------------------------------X

## ADDENDUM "B" TO CIVIL APPEAL PRE-ARGUMENT STATEMENT OF PLAINTIFF-APPELLANT, JOHN BEATTY

### LIST OF ISSUES PROPOSED TO BE RAISED ON APPEAL

      1.     Whether the Court below erred in determining, as a matter of law, that defendants-appellees were entitled to summary judgment in their favor on the first claim in plaintiff-appellant's complaint alleging liability on the part of defendant-appellee, James Vafeades, under 42 U.S.C. § 1983, for retaliating against plaintiff-appellant for engaging in speech protected by the First Amendment to the United States Constitution.

      2.     Whether the Court below erred in determining, as a matter of law, that defendants-appellees were entitled to summary judgment in their favor on the second claim in plaintiff-appellant's complaint alleging liability on the part of defendant-appellee, Incorporated Village of Rockville Centre, under 42 U.S.C. § 1983, for retaliating against plaintiff-appellant for engaging in speech protected by the First Amendment to the United States Constitution.

      3.     Whether the Court below erred in determining, as a matter of law, that defendants-appellees were entitled to summary judgment in their favor on the third claim in plaintiff-appellant's complaint alleging liability on the part of defendants-appellees, in tort, under New York Law, for retaliating against plaintiff-appellant for engaging in speech protected by Article 8 of the New York State Constitution.

      4.     Whether the below erred in determining, as a matter of law, that defendants-appellees could not be found liable, under either 42 U.S.C. § 1983 or the tort law of New York State, for retaliating against plaintiff-appellant for engaging in speech otherwise protected by the First Amendment to the United States Constitution and/or Article 8 of the New York State

Constitution because plaintiff-appellant did not speak as a public citizen but, rather, in the course of his duties as a Police Sergeant.

STANDARD OF REVIEW FOR EACH PROPOSED ISSUE

    1.      This Court reviews *de novo*, a district court's grant of summary judgment. *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015).

DATED: Smithtown, New York
        September 18, 2025


                        SCHAEFER LAW GROUP, P.C.

                            /s/
                  Wayne J. Schaefer, Esq.
                  *Attorneys for Plaintiff-Appellant,*
                  JOHN BEATTY
                  22 Lawrence Avenue, Suite 301
                  Smithtown, New York 11787-3619
                  Tel. (631) 382-4800
                  Fax: (631) 382-4801